# COUNTY OF CUMBERLAND.

### STATE OF MAINE *versus* CONLEY & *al.*

Whoever shall unlawfully kill any human being, with malice aforethought, either express or implied, shall be deemed guilty of murder.

By c. 154, § 2, R. S., whoever shall commit murder with *express* malice aforethought, or in perpetrating or attempting to perpetrate any crime, punishable with death, or imprisonment in the State prison for life, or for an unlimited term of years, shall be deemed guilty of murder *of the first degree.*

And by § 3, whoever shall commit murder, *otherwise* than is set forth in the preceding section shall be deemed guilty of murder *of the second degree.*

In a criminal proceeding it is proper for the Judge to inform the jury what constitutes the several degrees of crime included in the indictment; but the *mode* and *extent* are within his own discretion, and omissions of principles of law applicable thereto are not subject to exceptions, unless he is specially requested to state them.

Thus, where the respondents were indicted for murder, and the Judge, after explaining the elements of that crime, instructed the jury, that when a human being was unlawfully killed, without such malice, upon sudden provocation, and in the heat of passion, and under such circumstances that it could not be justified or excused, the crime would be manslaughter; and then described, in the language of the statute, murder of the first degree and that before they could find them guilty of that highest offence, they must be satisfied from the testimony, that the prisoners had a deliberate purpose and formed design to kill the deceased before the fatal wounds were inflicted; — that the unlawful killing of a human being without express malice, and under such circumstances as would not make the offence murder of the first degree, and not under sudden provocation and in the heat of passion or under such circumstances as would reduce the offence to manslaughter, would be murder *of the second degree,* and it would not be necessary, that they should more particularly consider under what circumstances malice aforethought would be *implied;* — *it was held,* that the elements of the lesser grade of murder were sufficiently set forth for the comprehension of the jury, nor was the question of malice thereby withdrawn from their consideration.

Whether, after a verdict against the respondents, the Judge will allow an inquiry of the jury, if they found the name of the person killed as alleged in the indictment, is within his *discretion,* and his refusal is not open to exceptions.

So also where two persons are indicted for the same offence, whether they shall be allowed *separate* trials, is within the *discretion* of the Court.

State *v.* Conley.

An indictment commencing "State of Maine, Cumberland, ss. At the Supreme Judicial Court begun and holden at Portland within the county of Cumberland," is sufficient to show, that the Court at which it was found, was holden for that county in the *State of Maine.*

In criminal pleading the *venue* must appear to be within the jurisdiction of the Court.

But where the material facts are alleged to have taken place "in said county of Cumberland," being the same county named in the margin, it is a sufficient reference thereto, and will authorize the Court to try the indictment in that county.

In an indictment for murder by the infliction of *wounds,* their *length, breadth* and *depth* may be omitted, if it is alleged they were *mortal.*

Where it is alleged that the defendants with a dangerous weapon struck and beat, giving mortal wounds of which the person died, it is unnecessary to add the words "by the stroke or strokes aforesaid."

It is essential, that the *time* of the mortal stroke and death should be stated in the indictment, but the old form "did suffer and languish, and languishing did live," may be omitted.

AT the March term, 1854, the prisoners were tried before SHEPLEY, C. J. on an indictment as follows: —

## "STATE OF MAINE.

"CUMBERLAND, SS. — At the Supreme Judicial Court, begun and holden at Portland, within and for the county of Cumberland, on the first Tuesday of March, in the year of our Lord one thousand eight hundred and fifty-four.

"The jurors for said State, upon their oaths present that Martin Conley and John Conley of Portland in the county of Cumberland, laborers, on the twelfth day of February, in the year of our Lord one thousand eight hundred and fifty-four, at Portland in said county of Cumberland, with force and arms, in and upon one Thomas Guiner, feloniously, wilfully and of their malice aforethought, did make an assault, and that they, the said Martin Conley and John Conley, then and there with certain dangerous weapons, to wit, certain wooden clubs, of the length of four feet and of the thickness of two inches, which they, the said Martin Conley and John Conley, then and there, in both of their hands had and held, the said Thomas Guiner, in and upon the front and upper part of the head of him, the said Thomas Guiner, then and there feloniously, wilfully and of their

malice aforethought, did strike and beat, giving unto him, the said Thomas Guiner, then and there with the said dangerous weapons, to wit, with the said wooden clubs, of the length of four feet and of the thickness of two inches, two mortal wounds, of which said mortal wounds he, the said Thomas Guiner, on the twenty-first day of February now last past, at Portland aforesaid in the county aforesaid, did languish and die. And so the jurors aforesaid, upon their oath aforesaid do say, that the said Martin Conley and John Conley, him, the said Thomas Guiner, in manner and form aforesaid, feloniously, wilfully and of their malice aforethought, did kill and murder, against the peace of said State, and contrary to the form of the statute in such case made and provided."

There was another count in the indictment which it is unnecessary to copy.

Before the jury was empanneled for the trial, the counsel for the prisoners moved that they might have a separate trial. This was denied. But each prisoner was allowed to challenge his number, allowed by law.

Testimony was introduced tending to prove, that the death of Thomas Guiner was occasioned by blows inflicted upon his head with a club. There was no testimony tending to prove that he was killed by any person while committing or attempting to commit some other offence.

The jury was instructed that murder was the unlawful killing of a human being with malice aforethought, either express or implied; *that* when a human being was unlawfully killed without such malice, upon sudden provocation and in the heat of passion, and under such circumstances that it could not be justified or excused, the crime would be manslaughter.

That murder was of two degrees. That murder of the first degree was the unlawful killing of a human being with express malice aforethought, when not done while committing or attempting to commit some other offence. That to find the prisoners guilty of this description of murder, they must

State *v.* Conley.

bo satisfied from the testimony that they had a deliberate purpose and formed design to kill the deceased, before the fatal wounds were inflicted; that it was not necessary that they should be satisfied that they had such deliberate purpose and formed design for any definite time before the fatal wounds were inflicted.

That the unlawful killing of a human being without express malice, and under such circumstances as would not make the offence murder of the first degree, and not under sudden provocation, and in the heat of passion, or under such circumstances as would reduce the offence to manslaughter, would be murder of the second degree, and it would not be necessary that they should more particularly consider under what circumstances, malice aforethought would be implied. Other instructions were given.

There was testimony introduced for the prisoners, tending to prove, that the person killed did not bear the name of Thomas Guiner, but did bear the name of Thomas Guiney.

The jury returned a verdict of guilty of murder in the second degree. Immediately after the verdict was rendered, and before the jury were discharged, the counsel for the prisoners requested that inquiry might be made what their finding was, respecting the name of the person killed. This request was refused.

To these refusals, rulings and instructions the prisoners excepted.

A motion was also filed to set aside the verdict as against the charge of the Court, the evidence and the weight of evidence; and the evidence in the case was reported.

A motion in arrest of judgment was also drawn up and seasonably filed for the following reasons: —

*First.* Because it is not alleged in the said indictment, that the Court wherein the said indictment was found against them was holden within and for the county of Cumberland and State of Maine.

*Second.* Because there is no sufficient venue alleged in

the said indictment, or in either of the counts thereof, to give this Court jurisdiction of the matters therein set forth.

*Third.* Because the assault, which it is alleged in the said indictment, that they, the said Martin Conley and John Conley in and upon one Thomas Guiner, feloniously, wilfully and of their malice aforethought, did make, is not alleged in either of the counts of said indictment, to have been made in the county of Cumberland, and State of Maine.

*Fourth.* Because the venue alleged in the said indictment, and in each of the counts thereof, is bad and insuffi-. cient in law, and did not, nor does now, give this Court jurisdiction of the matters therein alleged against the said defendants, or either of them.

*Fifth.* Because it is not alleged in the said indictment, or in either of the counts thereof, what were the length and breadth, or the length and depth of the two wounds alleged in said first count, or what were the length and breadth, or the length and depth of the several wounds alleged in said second count, or of either of the wounds alleged in either of the said two counts, of which it is therein alleged that the said Thomas Guiner "did die."

*Sixth.* Because it is not alleged in the said indictment, or in either of the counts thereof, that the wounds therein alleged, or either of them, were given, caused or produced by the striking and beating therein alleged against the said Martin and John Conley, or either of them — the necessary averment, "by the stroke or strokes aforesaid," being entirely omitted in each of the said counts.

*Seventh.* Because it is not averred in the said indictment, or in either of the counts thereof, that the mortal wounds therein alleged, or either of them, of which it is therein alleged that the said Thomas Guiner "did die," were given, caused or produced by said Martin Conley or John Conley, or either of them, in the county of Cumberland and State of Maine, or within the jurisdiction of said Court.

*Eighth.* Because it is not alleged in the said indictment, or in either count thereof, that the said Thomas Guiner, " of the said mortal wounds," therein alleged, " on and from the said twelfth day of February, in the year of our Lord one thousand eight hundred and fifty-four, until the said twenty-first day of February, now last past, did suffer and languish, and languishing did live."

*Ninth.* Because it is not alleged in the said indictment, or in either count thereof, that the said Thomas Guiner died of the mortal wounds therein alleged, or either of them, at any place within the county of Cumberland and State of Maine, or within the jurisdiction of said Court.

*Tenth.* Because the said indictment is informal, and insufficient in law, to authorize the said Court to pass sentence and judgment against them, the said Martin Conley and John Conley, or either of them.

*Clifford,* for the prisoner, in support of the exceptions.

1. The instruction defining the crime of manslaughter, is greatly too restricted, and when considered in its proper connection with the definition of murder in the second degree, was fatally prejudicial to the prisoner. 4 Black. Com. 191; 1 Hale's P. C. c. 38, p. 466; 1 Hard. P. C., c. 30, § 1; 1 East's P. C., c. 5, § 2, p. 218; *Com.* v. *Webster,* 5 Cush. 304, 307; Foster's Cr. Law, c. 5, p. 291; 3 Co. Litt., 287, b. N. S.; *Wroth* v. *Wriggs,* Cro. Eliz., 276; 1 Russ. on Crimes, p. 485; Ros. Cr. Ev., p. 682; Arch. Cr. Pl., p. 488, (mar. 410.) 3 Chitty Cr. Pl., 727, c. 14, § 4; 1 Stark. Cr. Pl., 76; *Ex parte Taylor,* 5 Cow. p. 51; Russ. & Ry. C. C., p. 42; *U. S.* v. *Freeman,* 4 Mason, 514; *Com.* v. *York,* 9 Met. 102.

2. It is incorrect to define one crime by another, and therefore the 4th instruction is erroneous. 3 Co. L. 287, b. N. S.; 4 Black. 191; *Com.* v. *Webster,* 5 Cush. 304; Foster's Cr. Law, p. 302; *State* v. *Dowd,* 19 Conn. 388; *Com.* v. *Roby,* 12 Pick. 503; *Rex* v. *Jennings,* Russ. & Ry. C.C. 388; Arch. Cr. Pl. 46, (37*) 1 Chitty Cr. Law, 169; 2 Hale's P. C. 169.

3. The definition of murder, as given, is as much too comprehensive as that of manslaughter is too restricted. 1 East's P. C. c. 5, § 4; *Jackman* v. *Bowker*, 4 Met. 235; and the error is material. *Thacher & al.* v. *Jones & al.*, 31 Maine, 534; *Com.* v. *Kimball*, 24 Pick. 374.

4. It is necessary in the trial of every charge of murder, in order to an intelligent inquiry into the legal character of the act of killing, to ascertain with precision the nature of malice in its legal sense, and what evidence is necessary to establish its existence. *Com.* v. *Webster*, 5 Cush. 304; 3 Chitty's Cr. Law, 727.

5. The latter clause of the fourth instruction is erroneous in this; that it withdrew the question of malice entirely from the consideration of the jury. 2 Stark. Ev. 948; Foster's Cr. Law, 256–7; *Rex* v. *Greenacre*, 8 Car. & P. 35, (34 C. L. on p. 284.)

The law *allows* the malice to be implied if the jury can collect it from the circumstances. *State* v. *Smith*, 32 Maine, 369; *Regina* v. *Canniff*, 9 Car. & P. 359, (38 C. L. 154;) *Com.* v. *York*, 9 Met. 102 to 104; 1 Leach, C. C. 378, note; 1 Russ. on Crimes, 490; Hayward's case, 6 Car. & P. 157, (25 C. L. 331;) Thomas' case, 7 Car. & P. 817, (32 C. L. 750.)

6. That clause of the fourth instruction, if it did not withdraw the question from the consideration of the jury, at least had the effect to change the burden of proof from the State to the prisoner, and therefore is erroneous. *State* v. *Fly*, 26 Maine, 312; *State* v. *Merrick*, 19 Maine, 398; *State* v. *Tibbetts*, 35 Maine, 81; *Com.* v. *York*, 9 Met. 93; Arch. Cr. Pl. 123.

7. Malice aforethought is an essential element, as well of murder in the second degree, as of murder by express malice. R. S., c. 154, § 1; *State* v. *Honeyman*, 2 Dallas, 228; *Com.* v. *Gibson*, 2 Vir. cases, 70; 1 Hale's P. C. c. 36, § 3, p. 450; St. 23 H. 8th; 1 East's P. C. c. 5, § 116, p. 345; 1 Chitty's Cr. Law, 220; 2 Ch. Cr. Law, 738; Arch. Cr. P. 61; 2 Haw. P. C. c. 25, § § 55, 60; *U. S.* v. *Mills*, 7 Pet. 138;

State *v.* Conley.

Powlter's case, 11 Co. R. 30; *Bradley* v. *Banks*, Yelverton, 205; 7 Dane's Abr. 209, c. 218, art. 13, § 2; 4 Com. Dig. Indictment, G. 6, p. 688; *People* v. *Enoch*, 13 Wend. 173; 1 Stark. Cr. Pl. 76, 77; *White* v. *Com.*, 6 Binney, 179 to 183; Crown Cir. Comp. 497.

8. It being necessary that the indictment should allege, that the act was done and committed of malice aforethought, it follows that the proof must correspond with the allegation. Ros. Cr. Ev. 99; *State* v. *Rushing*, 2 N. & M. C. 560.

9. When considered in any point of view, the fourth instruction was calculated to mislead the jury, and therefore is erroneous. *Miller* v. *Marston*, 35 Maine, 153; *Pierce* v. *Whitney*, 22 Maine, 113.

10. The request to be tried separately was improperly refused. 1 Ch. Cr. Law, 535; *Charnock's Case*, 3 Salk. 81; *Com.* v. *Drew*, 4 Mass. 391; R. S., c. 172, § 33; *State* v. *Soper*, 16 Maine, 293; 7 Cow. 383; *U. S.* v. *Sharpe*, 1 Pet. C. C. R. 118.

To the motion in arrest of judgment, he cited for *cause* 1*st.* 4 Com. Dig. G. 2, p. 672, (*p. 524,) n. h.; 1 Star. Cr. Pl. 236; 1 Ch. Cr. Law, 327.

*Causes* 2, 3, 4, 7 and 9, *King* v. *Burredge*, 3 Will. 496; *Childs' case*, 1 Cro. Eliz. 606, part 2d; *Lenthal's case*, 1 Cro. Eliz. part 1, p. 137; *Rex* v. *Holland*, 5 Term, 607; *Rex* v. *Aylette*, 1 Term, 69; *King* v. *Haynes*, 4 Maule & Sel. 214; 4 Black. Com. 307; *Rex* v. *Tucker*, 1 Ld. Ray., 2; *U. S.* v. *Neal*, 1 Gall. 387; Co. Litt. 303, a. b.; 2 Hale's P. C. 166 and 180; 2 Haw. P. C. c. 25, § 34; 10 Petersd. Abr't, Tit. Indictment, B. 312, n. a.; *Queen* v. *Harris*, 2 Ld. Ray. 1304; *Queen* v. *Rhodes*, 2 Ld. Ray. 888; *Barnes* v. *the State*, 5 Yerger, 186; *U. S.* v. *Grush*, 5 Mason, 302; *Com.* v. *Springfield*, 7 Mass. 9.

*Cause* 5. 3 Ch. Cr. Law, 735 – 6; 1 East's P. C. c. 5, § 109, pp. 342 – 3; 2 Haw. P. C., c. 23, § 81. Unless there is a complete separation or perforation of some part. *Heydon's case*, 4 Co 41, a.

*Cause* 6. 1 East's P. C., c. 5, § 111, p. 343; Archb. Cr. P. 52, (42, margin;) *White* v. *Commonwealth*, 6 Binney, 179; 2 Hale's P. C. 186; 2 Haw. P. C., c. 23, § 82 and 83; *Turns* v. *Commonwealth*, 6 Metc. 225; *Rex* v. *Dale & als*. 1 Moody's C. C., p. 5.

*Cause* 8. The omission of those words is contrary to established precedents and is fatal. Davis's Prec. 172; Crown Cir. Comp. 483; 2 Hale's P. C. 186.

The motion for a new trial was also argued.

*Evans*, Att'y General, *contra*.

The prisoners had no legal right to separate trials. The full privilege of challenge was allowed. *State* v. *Soper*, 16 Maine, 295; *U. S.* v. *Marchant*, 12 Wheat. 480.

The instructions as to the different degrees of felonious homicide, were in accordance with the definitions in all the books on criminal law. No exceptions were taken to any instructions as to the name of the deceased, and the prisoners had no *legal right* to have the question as to how they found the name proposed to the jury.

As to the motion in arrest, the 1, 2, 3, 4, 7 and 9th are similar, and it is believed none of the causes have any foundation.

The caption is no part of the indictment. Arch. Cr. Pl. 33. PREBLE, J., in *Low's case*, 4 Greenl. 450; 13 Ver. 647; 18 Ver. 70; *Com.* v. *James*, 1 Pick. 375.

The venue was well laid. Arch. Cr. Pl. 23; 1 Ch. Cr. Law, 193. The 3d and 4th causes are equally unfounded; " said county" is the county named in the margin.

The 7th and 9th are of the same character, and the 10th is but a summary of the preceding. The words " then and there" repeated, sufficiently set forth the time and place. They necessarily refer to some time and place before named, and only *one* time and *one place* are before named. It is fully averred in what county, what State and under what jurisdiction the occurrences took place. See Arch. Pl. 48; 1 Ch. Cr. Law, p. 197; *State* v. *Slocomb*, 8 Black. 315, referred to in 10 U. S. Dig. p. 261, clause 4.

As to the 5th cause assigned, such a description is unnecessary. Arch. 487; *Rex* v. *Mosely*, 1 Mon. C. C. 97; *Commonwealth* v. *Webster*, 5 Cush. 296.

The 6th cause has nothing to rest upon; the allegations in the indictment are full and against it. Arch. 54; 1 Ch. Cr. Law, 242; *White* v. *Commonwealth*, 6 Bin. 179.

As to the 8th cause, that point has been expressly decided in *Penn.* v. *Bell*, Addison, 171.

The remaining motion was also fully argued.

TENNEY, J. — By the common law, felonious homicide is the killing of any human being without justification or excuse. 4 Black. Com. 188. It is divided into manslaughter and murder. Manslaughter is the unlawful killing of another without malice aforethought either express or implied, which may be either voluntary, in the heat of passion, and upon sudden provocation, or involuntary, in the commission of some unlawful act. 4 Black. Com. 191.

Murder is where a person of sound memory and discretion unlawfully kills any human being in the peace of the State, with malice aforethought either express or implied. 4 Bl. Com. 195.

By the Revised Statutes of this State, c. 154, § 1, whoever shall unlawfully kill any human being, with malice aforethought either express or implied, shall be deemed guilty of murder. By § 2, whoever shall commit murder with *express* malice aforethought, or in perpetrating, or attempting to perpetrate any crime punishable with death, or imprisonment in the State prison for life or an unlimited term of years, shall be deemed guilty of murder in the first degree, and shall be punished with death. By § 3, whoever shall commit murder otherwise than is set forth in the preceding section, shall be deemed guilty of murder in the second degree, and shall be punished by imprisonment for life in the State prison. By § 5, whoever shall unlawfully kill any human being in the heat of passion, upon sudden provocation, without malice aforethought either express or

implied, or in any manner shall be guilty of manslaughter at common law, shall be punished by imprisonment, &c.

The jury was instructed that murder was the unlawful killing of a human being with malice aforethought, either express or implied; —

That when a human being was unlawfully killed without such malice, upon sudden provocation, and in the heat of passion, and under such circumstances that it could not be justified or excused, the crime would be manslaughter; —

That murder was of two degrees; — that murder of the first degree was the unlawful killing of a human being with express malice aforethought, when not done while committing or attempting to commit some other offence; — that to find the prisoners guilty of this description of murder, they must be satisfied from the testimony that they had a deliberate purpose and formed design to kill the deceased before the fatal wounds were inflicted; —

That the unlawful killing of a human being without express malice, and under such circumstances as would not make the offence murder of the first degree, and not under sudden provocation and in the heat of passion, or under such circumstances as would reduce the offence to manslaughter, would be murder of the second degree, and it would not be necessary that they should more particularly consider under what circumstances malice aforethought would be implied.

It is contended in behalf of the accused, that the instructions defining the crime of manslaughter were greatly restricted; and when considered in their proper connection with murder in the second degree, were fatally prejudicial to the prisoners.

When a party is charged in an indictment with the crime of murder, the felony actually committed is the same, whether it has all the elements of murder in the first or second degree, or whether it is wanting in the criterion of murder, and is therefore manslaughter only. The two lower degrees of felonious homicide are embraced in the charge of the

State *v.* Conley.

higher offence, and a conviction of either of the three, or an acquittal under the charge properly made, is a bar to any other indictment for the same acts.

It is proper that the Judge should inform the jury, in his instructions, what constitutes the several degrees of crime included in the indictment. The mode and extent of doing this, must like other duties be submitted to his judgment and discretion. He may omit to state fully many legal principles, which if contained in the instructions might not be inappropriate. But few cases can be presented where the law applicable to the evidence introduced is entirely exhausted. And omissions are not a subject of exceptions unless they occur after a special request of a party for their supply. Exceptions can be alleged by a party thinking himself aggrieved only to any opinion, direction or judgment of the presiding Judge, in any action or process, civil or criminal. R. S., c. 96, § 17.

The definition of murder and manslaughter was given, in accordance with that contained in the authorities cited by the prisoners' counsel, in terms which could not fail' to be understood by intelligent minds. To constitute murder, the jury were informed that the unlawful killing must be with malice aforethought, either express or implied; and that the unlawful killing without such malice, was manslaughter.

The first instruction given comprehended all murders, and the definition of the higher degree was full, specific and clear, so far as it became necessary under the evidence introduced. These instructions could not, and did not involve the prisoners in the crime of the first degree, they not being guilty thereof.

The statute creates the distinction between murder of the first and second degree, and has given no other definition of the latter than those murders which are not embraced in the definition of such as are of the first degree. No instructions defining the second degree of murder more particularly to the jury, are legally required unless specially requested.

The jury were informed in what express malice consisted, when the acts charged were not done while committing, or attempting to commit some other offence, of which no evidence was introduced. Then followed the instructions in reference to murder of the second degree. It was therein stated, as one element thereof, that it was the unlawful killing of a human being without express malice, and under such circumstances as would not make the offence murder of the first degree. Another element was, that the unlawful killing must not be under sudden provocation and in the heat of passion, or under such circumstances as would reduce the offence to manslaughter. And in the definition of manslaughter, in addition to the unlawful killing upon sudden provocation and in the heat of passion, was also included, "without malice aforethought either express or implied, and under such circumstances that it could not be justified or excused."

This definition of murder of the second degree, taken in connection with the instructions which the jury had previously received, excluded the killing with a deliberate purpose and formed design to take the life of the deceased before the fatal wounds were inflicted, and also whatever would reduce the felony below that of murder; and consequently would necessarily require the existence of implied malice aforethought.

It is contended, that the latter part of the instructions in reference to murder of the second degree, withdrew the question of malice entirely from the consideration of the jury.

The jury had been informed, that to authorize a conviction of the prisoners of murder, they must have done the acts alleged with malice aforethought, and to find murder of the first degree, they must be satisfied of the existence of express malice aforethought in the unlawful killing. If this express malice was negatived, the jury would be expected under other instructions before given, to inquire whether the mind was influenced by implied malice aforethought, and

State *v.* Conley.

if this question should be answered in the affirmative, it followed that there did exist sufficient to constitute the offence of murder in the second degree. Such findings would of necessity exclude the offence of murder in the first degree, and also the lowest species of felonious homicide. Consequently the intermediate crime would have been found to have been committed. The question of malice was not withdrawn from the jury, but on the other hand, to authorize a verdict for the highest offence, express malice was required to be found, and that a necessary ingredient in the crime of murder of an inferior grade, was malice aforethought, which was implied. And if they failed to find the former, and did find implied malice aforethought, the verdict must be against the prisoners, without a more particular consideration under what circumstances malice would be implied.

Again, it is contended, that the instruction, that it would not be necessary, that the jury should more particularly consider under what circumstances malice aforethought would be implied, if it did not withdraw the question of malice from the consideration of the jury, at least had the effect to change the burden of proof from the State to the prisoners. Whether this change could be legitimately made upon proof of an unlawful killing, it becomes unnecessary to discuss; for it is apparent that the instructions do not authorize the proposition of the prisoner's counsel. Under the instructions, in reference to murder, both of the first and second degree, to justify a verdict for either, the jury were required to find affirmatively, that the unlawful killing was with malice aforethought, and that the extenuating facts and circumstances, if any existed, were insufficient to reduce the offence to that of manslaughter.

The omission of the Judge to inquire of the jury respecting the name of the person killed, according to the request of the prisoner's counsel, after the verdict of guilty was returned, is no ground of exceptions. He might or might not have made this inquiry in the exercise of his own discretion.

Another ground of exception is, that before the jury were empannelled for the trial of the prisoners, their counsel moved, that they be allowed separate trials, which motion was overruled, and separate trials refused. Each was allowed to challenge his number of jurors. It was held in *U. S.* v. *Marchant & Colson*, 12 Wheat. 480, that it was a matter of discretion in the Court to allow separate trials of those jointly indicted, and not of right in the parties. In *State* v. *Soper*, 16 Maine, 293, the Court denied such motion on the authority of the case cited from 12 Wheat.

The counsel for the prisoners object to the sufficiency of the indictment, and rely upon a motion in arrest of judgment.

The first cause assigned in this motion is, that the indictment contains no allegation, that the Court wherein the same was found against them, was holden within and for the county of Cumberland, and State of Maine. It has been determined by this Court, that the caption of an indictment makes no part of the finding of the grand jury. *Low's case*, 4 Greenl. 439.

The caption is conformable to general, if not universal practice in this and other States, and is sufficient to show, that the Court in which the indictment was found was holden in the State of Maine, at Portland, in and for the county of Cumberland. *U. S.* v. *Grush*, 5 Mason, 290; *Turns* v. *Commonwealth*, 6 Met. 224.

Another ground for arresting the judgment, as appears in the 2, 3, 4, 7, and 9th causes, is that it does not appear that the venue or any material fact alleged in the body of the indictment was at a place within the jurisdiction of the Court. In 1 Chitty's Crim. Law, 194, the author says, we are now to consider how the venue is to be stated, both in the margin, and in the body of the indictment. — The county is stated in the margin thus: — "Middlesex" or "Middlesex to wit." In the body of the indictment, also, the facts should in general be stated to have arisen in the county in which the indictment is preferred, so that it may appear, that the

offence was within the jurisdiction of the Court; and there-
fore, if a parish, vill or other place where the offence, or
part of it occurred, be stated without naming the county in
the margin, or expressly referring to it, by the words "the
county aforesaid," the indictment will be defective. When
only one county is named the words "county aforesaid"
will have sufficient reference to the county in the margin.
*Barnes* v. *State,* 5 Yerger, 186; *Turns* v. *Commonwealth,*
6 Met. 224.

The fifth cause for the arrest of judgment, is that the in-
dictment contains no allegation of the length, breadth or
depth of the wounds alleged to have been caused by the
striking of the prisoners. When death is occasioned by a
wound, it should be stated to have been mortal. It must
appear from the indictment, that the wound given was
sufficient to cause the death; and for this reason, unless it
otherwise appear, that the length and depth must be shown;
but it is not necessary to state the length, depth or breadth
of the wound, if it appear that it contributed to the par-
ty's death. *Rex* v. *Mosley,* 1 Ry. & Moody, C. C., 97. In
the case referred to, there were several wounds, and it
was held by ABBOTT, C. J., BEST, C. J., ALEXANDER, C. B.,
GRAHAM, B., BAYLEY, J., PARK, J., BURROW, J., GARROW, B.,
HULLOCK, B. and GASALEE, J., to be unnecessary to de-
scribe the length, breadth or depth of the wounds. HOL-
ROYD J. and LITTLEDALE, J. were of a contrary opinion.

In *Rex* v. *Tomlinson,* 6 Car. & P. 370, it is said by
PATTERSON, J., "my brother recollects the case, [*Rex* v.
*Mosley,*] perfectly well, and informs me that it was very much
discussed; and that the ground of the decision was that as
common sense did not require the length, breadth and depth
of the wounds to be stated, it was not necessary that they
should be stated; that case is therefore a direct authority
against the objection, and in consequence the objection can-
not prevail."

Another ground for the arrest of the judgment is, that it
is not alleged in the indictment, that the wounds described

therein, or either of them, were given, caused or produced by the striking alleged, the necessary averment "by the stroke or strokes aforesaid" being omitted. It is averred in the indictment, that the prisoners then and there with the dangerous weapons, &c., which they then and there in both their hands, had and held, the said Thomas Guiner, in and upon the front and upper part of the head, &c., did strike and beat, giving unto him, &c., then and there with said dangerous weapons, &c., two mortal wounds, of which said mortal wounds, the said Thomas Guiner, on the 21st day of February, aforesaid, did languish and die. It is not easy to perceive in what respect the allegation fails to be sufficient. It is full, that the prisoners struck and beat the deceased, giving unto him two mortal wounds with the dangerous weapons, before described, which they in both their hands, had and held, of which said mortal wounds the deceased died. It necessarily follows, from the facts alleged in language sufficiently accurate and technical, that the strokes inflicted by the prisoners caused mortal wounds, which produced the death charged in the indictment.

The eighth objection to the indictment is, that it does not contain the allegation that the deceased, of the said mortal wounds, on and from the said twelfth day of February, &c., until the twenty-first of the same February, *did suffer and languish, and languishing did live.* The prisoner's counsel, in support of this objection refer to certain precedents of forms of indictment, without any other authority that this allegation is essential. It is held however, that the *time* both of the stroke and death should be stated on the record, the former because the escheat and forfeiture of lands relate to it, the latter in order that it may appear that the death took place within a year and a day after the mortal injury was received. 1 Chitty's Cr. Law, 222 ; 3 ibid. 736. It being alleged in the indictment now under consideration that the deceased did languish and die on the twenty first day of February, in the year of our Lord, 1854, of the mortal wounds inflicted on the 12th day of the same month,

in full, precise, and technical language, the reason of the principle is satisfied. And no rule of law which can be found being violated, the indictment is regarded sufficient in this respect.

A motion was filed that the verdict be set aside because as alleged therein it was against law, against the charge of the Court, against evidence, and the weight of evidence.

It does not appear from the case that the verdict was against law or the charge of the Court. The evidence adduced at the trial is reported. It is voluminous. Some portions are not in harmony with other portions. There was evidence on which the verdict was warranted if it were true and believed by the jury. They were the judges of the facts presented, and the evidence exhibits nothing showing necessarily that their verdict was improper, and it cannot with propriety be disturbed.

*Exceptions and motion overruled.*

HOWARD, APPLETON and HATHAWAY, J. J., concurred.