STATE OF MAINE

*vs.*

RALPH THOMAS PARK, II

Kennebec.    Opinion, July 30, 1963.

*Jon Lund, County Atty.,*
*Foahd Saliem, Asst. Atty. Gen.,*
*Wayne Hollingsworth, Asst. Atty. Gen.,* for State

*Lewis I. Naiman,*
*Harold Shapiro,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WILLIAMSON, C. J.  The respondent, a boy fifteen years old, was convicted of murder at the October 1962 term of the Kennebec Superior Court on pleas of not guilty and not guilty by reason of insanity.  The case is before us on exceptions to the refusal of the presiding justice to give requested instructions to the jury.  The exceptions are overruled.

The jury in reaching its verdict could have found the following facts.  The respondent "bumped into" the victim Avis Longfellow, a girl fifteen years old, on a camp road at Lake Cobbosseecontee.  The victim dropped a child about two years old she was carrying and called the respondent "a queer," a term which he understood referred to a "filthy thing" — a "common sexual perversion."  The respondent then drew from his pocket a jackknife and stabbed the victim to death by inflicting more than forty knife wounds. He then pursued and stabbed the young child.

The respondent did not take the stand.  The evidence of the physical contact with the victim and her words came from oral admissions and a signed statement by the respondent.  Expert evidence of psychiatrists was offered by both State and respondent on the issue of insanity.

On the evidence the jury was fully justified in finding the respondent guilty of murder.

## EXCEPTION 1

The error claimed in Exception 1 is that the court removed the issue of manslaughter from consideration of the jury. The instructions requested and refused raise two points: (1) that the general law of manslaughter (apart from any question of mental condition) was applicable on the evidence; and (2), in the words of his brief, that "The general law of murder with respect to the alleged commission of the crime by the respondent, while suffering from either a mental disease or defect, as defined by Sec. 38-A, Chap. 149, R. S. of Maine, 1961 (*Durham* v. *United States*, 214 F. (2nd) 862, and *McDonald* v. *United States*, 312 F. (2nd) 847), which has the effect of reducing the crime of murder to that of manslaughter, by virtue of the fact that the mental disease or defect wipes out the specific intent of premeditation or deliberation, and malice aforethought."

In the course of the charge the presiding justice discussed among other matters the law relating to murder, manslaughter, and insanity or mental responsibility for criminal conduct under the 1961 Act, or Durham Rule as modified by the Legislature. R. S., c. 149, § 38-A. He stated in substance that there was no evidence in the case which could reduce the killing (if established) from murder to manslaughter. Three possible verdicts were submitted to the jury; namely, not guilty, guilty of murder, and not guilty by reason of insanity.

There was plainly no question about the fact of the killing by the respondent. It may fairly be said that the jury was left with the choice of finding the respondent guilty of murder or not guilty by reason of insanity.

Murder and manslaughter are defined by statute in R. S., c. 130 as follows:

"**Sec. 1. Murder, definition.**—Whoever unlawfully kills a human being with malice afore-

thought, either express or implied, is guilty of murder and shall be punished by imprisonment for life."

"**Sec. 8. Manslaughter, definition.**—Whoever unlawfully kills a human being in the heat of passion, *on sudden provocation*, without express or implied malice aforethought . . . or commits manslaughter as defined by the common law, shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years." (Emphasis ours.)

The differences between the two offenses have been set forth by our court in the often cited cases below.

"The jury was instructed that murder was the unlawful killing of a human being with malice aforethought, either express or implied;—

"That when a human being was unlawfully killed without said malice, upon sudden provocation, and in the heat of passion, and under such circumstances that it could not be justified or excused, the crime would be manslaughter; . . ."
*State* v. *Conley,* 39 Me. 78, 88.

"The jury were instructed that 'where the killing is unlawful, and neither express or implied malice exists, the crime is reduced from murder to manslaughter. But in all cases where the unlawful killing is proved, and there is nothing in the circumstances of the case as proved, to explain, qualify or palliate the act, the law presumes it to have been done maliciously; and if the accused would reduce the crime below the degree of murder, the burden is upon him to rebut the inference of malice, which the law raises from the act of killing, by evidence in defence.' "
*State* v. *Knight,* 43 Me. 11, 137.

"Malice is *implied* by law from any deliberate, cruel act, committed by one person against another, suddenly, without any, or without a considerable provocation. And all homicide is, as a

general rule, presumed to be malicious, until the contrary appears from circumstances of alleviation, to be made out by the prisoner, unless they arise out of the evidence produced against him. 1 Russ. on Crim. 183, and authorities there cited." *State v. Neal*, 37 Me. 468, 470; *State v. Arsenault*, 152 Me. 121, 124 A. (2nd) 741.

Setting aside any question arising from the respondent's mental condition, we find in the record no evidence from which the jury could have found that the homicide was committed without implied malice. "[Malice] is implied when there is no showing of actual intent to kill, but death is caused by acts which the law regards as manifesting such an abandoned state of mind as to be equivalent to a purpose to murder. Malice includes intent and will." *State of Maine v. Merry*, 136 Me. 243, 248, 8 A. (2nd) 143.

At best for the respondent, he "bumped into" the deceased and was angered by her calling him "a queer." There is not the slightest evidence that the physical contact was an offensive act by the deceased against the respondent. If the words of the deceased angered the respondent, he is faced with the plain rule of law that words alone do not constitute sufficient provocation to reduce homicide from murder to manslaughter.

"In considering what is regarded as such adequate provocation, it is a settled rule of law, that no provocation by words only, however opprobrious, will mitigate an intentional homicide, so as to reduce it to manslaughter."
*Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 305.

"The principle . . . that an affray may occur or sudden provocation be given which, if acted on in the heat of passion produced thereby, might mitigate homicide to manslaughter, yet if the provocation, though sudden, be not of that character which would, in the mind of a just and reasonable

man, stir resentment to violence, endangering life, the killing would be murder, applies here."
*Holmes* v. *State* (Ala.), 7 So. 193, 194.

See *Commonwealth* v. *York,* 50 Mass. (9 Met.) 93; *People* v. *Marrow* (Ill.), 85 N. E. (2nd) 34; *Commonwealth* v. *Cisneros* (Pa.), 113 A. (2nd) 293; 1 Wharton's Crim. Law (12th ed.) §§ 584, 585; 40 C. J. S., Homicide, §§ 46, 47; 26 Am. Jur., Homicide, §§ 25, 29.

Whether there was any evidence from which the jury could find provocation and other elements reducing the offense to manslaughter, was a question of law for the determination of the court. The jury is the judge of the facts and must take the law from the court. *State* v. *Wright,* 53 Me. 328, 345. In the absence of any evidence from which the jury could find manslaughter, the court properly withdrew the issue from their consideration. There was no error in failing to give the requested instructions. *Foster* v. *State* (Ariz.), 294 P. 268; *Singh* v. *State* (Ariz.), 280 P. 672; *Sparf and Hansen* v. *U. S.,* 156 U. S. 51, 62, 103; *State* v. *Nelson* (N. H.), 175 A. (2nd) 814; *Commonwealth* v. *Cisneros, supra; State* v. *Prescott* (R. I.), 40 A. (2nd) 721; *State* v. *Cianflone* (Conn.), 120 A. 347; *Commonwealth* v. *Moore,* 323 Mass. 70, 80 N. E. (2nd) 24; *Commonwealth* v. *Heinlein,* 256 Mass. 387, 152 N. E. 380; 16 C. J., Criminal Law, § 2485; 26 Am. Jur., Homicide, §§ 555, 559; 41 C. J. S., Homicide, §§ 390, 395; Abbott, Criminal Trial Practice (4th ed.) § 674, p. 1266; 2 Bishop's New Criminal Procedure, § 980.

We are aware that under our practice as a matter of custom the jury in murder cases is generally given the opportunity to find manslaughter. In *State* v. *Albanes,* 109 Me. 199, 83 A. 548, however, the court with one justice dissenting upheld a conviction of murder when manslaughter was not given as a possible verdict.

In *State* v. *Duguay*, 158 Me. 61, 178 A. (2nd) 129, it was urged on appeal that the homicide was manslaughter and not murder. The case does not hold, as suggested by the respondent, that in every case an instruction permitting a manslaughter verdict must be given, but only that, such an instruction having been given, the verdict of murder was fully justified.

The respondent further contends that mental disease or defect as defined in our 1961 statute compels the reduction of homicide from murder to manslaughter. He would have us adopt a rule of partial or limited responsibility, bearing upon the degree of the offense. This we are not prepared to do.

The line between criminal responsibility and lack of criminal responsibility is drawn by our 1961 statutes. We then discarded the McNaghten Rule and adopted the Durham Rule with modifications.

The statute in R. S., c. 149 reads:

> **"Sec. 38-A. Responsibility.** An accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect. The terms 'mental disease' or 'mental defect' do not include an abnormality manifested only by repeated criminal conduct or excessive use of drugs or alcohol."

In finding against the respondent on his plea of not guilty by reason of insanity, the jury found him responsible for his acts, and so guilty of murder.

The respondent would inject a standard of responsibility determined not by insanity (or lack of criminal responsibility), but by a mental disease or defect not destroying total criminal responsibility for the respondent's acts. In brief, the respondent proposes to use facts not sufficient to establish that he was not criminally responsible under

our 1961 Durham Rule for the purpose of reducing the degree of homicide from murder to manslaughter. In *Fisher* v. *U. S.*, 328 U. S. 463, 66 S. Ct. 1318, 1323, the Supreme Court with three justices dissenting held that under the law of the District of Columbia "that an accused in a criminal trial is not entitled to an instruction based upon evidence of mental weakness, short of legal insanity, which would reduce his crime from first to second degree murder." We recognize that *State* v. *Green* (Utah), 6 P. (2nd) 177 and *Maher* v. *People* (Mich.), 81 Am. Dec. 781 take a contrary view. See also Glueck, Law and Psychiatry, p. 24.

We had no such rule of partial or limited responsibility under the McNaghten Rule. There is nothing inherent in our Durham Rule requiring the creation of a new zone of uncertain width with changing shadows for the benefit of those charged with crime.

## EXCEPTION 2

The court refused to give the following instruction:

"That the defendant is entitled to every inference in his favor which can be reasonably drawn from the evidence, and where two inferences may be drawn from the same facts, one consistent with guilt and one consistent with innocence, the defendant is entitled to the inference which is consistent with his innocence."

We are satisfied from a study of the charge that the instruction requested was given in substance. There was no reason to believe that the jury was not properly advised of its duties in this respect.

## EXCEPTION 3

The respondent requested and the court refused to instruct the jury as follows:

"That, the consequences of a verdict of not guilty by reason of insanity, in the event the jury find the respondent not guilty by reason of insanity, are set forth in Sec. 38-B, Chap. 149, R. S. of Maine, 1961; and the Court should have either read or summarized said statutory provision to the jury, which is:

" 'Sec. 38-B. **Commitment of person acquitted on basis of mental disease or defect.**—When the respondent is acquitted on the ground of mental disease or mental defect excluding responsibility, the verdict and the judgment shall so state and the court shall order him to be committed to the custody of the commissioner of mental health and corrections to be placed in an appropriate institution for the mentally ill for custody, care and treatment.' "

It has long been the settled practice in our State that the function of the jury is to find the facts and to apply the law as given by the court to the facts in reaching their verdict. Punishment, or whatever may transpire after the verdict, is not the concern of the jury.

No exception to this general rule is found in our cases where the plea has been not guilty by reason of insanity. There was therefore no error on the part of the presiding justice in refusing to inform the jury of the consequences of a verdict of not guilty by reason of insanity.

We are not convinced that there is any sound reason for altering our practice by reason of the adoption of the 1961 statute relating to mental responsibility for criminal conduct. We are aware that in cases arising on appeal from the courts of the District of Columbia under the Durham Rule, so-called, which our 1961 Act closely follows, the point has been otherwise decided. *Lyles* v. *U. S.*, 254 F. (2nd) 725 (C. A. D. C.) ; *Catlin* v. *U. S.*, 251 F. (2nd) 368 (C. A. D. C.) ; *McDonald* v. *U. S.*, 312 F. (2nd) 847 (C. A. D. C.). The result we reach is found in *Pope* v.

*U. S.*, 298 F. (2nd) 507 (C. A. 5th), involving an insanity plea but not the Durham Rule. The respondent takes nothing from the exception.

EXCEPTION 4

The court refused to give the following instruction:

"That, if you the jury believe beyond a reasonable doubt that the accused was not suffering from a diseased or defective mental condition at the time he committed the criminal act charged, you may find him guilty. If you believe he was suffering from a diseased or defective mental condition when he committed the act, but believe beyond a reasonable doubt that the act was not the product of such mental abnormality, you may find him guilty. Unless you believe beyond a reasonable doubt either that he was not suffering from a diseased or defective mental condition, or that the act was not the product of such abnormality, you must find the accused not guilty by reason of insanity. Thus your task would not be completed upon finding, if you did find, that the accused suffered from a mental disease or defect. He would still be responsible for his unlawful act if there was no causal connection between such mental abnormality and the act. These questions must be determined by you from the facts which you find to be fairly deducible from the testimony and the evidence in this case. . . (*Durham* v. *United States*, 94 App. DC 228, 214 F. (2nd) 862. 45 ALR (2nd) 1430 pp. 1445-1447.)"

In substance the court instructed the jury that the respondent was presumed to be sane and that the burden was upon the respondent of establishing insanity by the preponderance of evidence. In short, the jury was charged in accordance with our law as known and acted upon without question since the leading case of *State* v. *Lawrence*, 57 Me. 574 in 1870. See also *State* v. *Arsenault, supra; State* v. *Quigley*, 135 Me. 435, 199 A. 269; *State* v. *Turner*, 126 Me. 376, 138 A. 562; *State* v. *Parks*, 93 Me. 208, 44 A. 899.

The respondent in requesting the instruction seeks to have us adopt the rule that upon the introduction of some evidence of mental disorder, sanity would then become a fact to be proved by the State beyond a reasonable doubt. This was the rule in effect in the District of Columbia when *Durham* v. *U. S., supra,* was decided. The court did no more than apply existing law on the burden of proof of insanity in a criminal case to the *Durham* situation. See *Tatum* v. *U. S.,* 190 F. (2nd) 612 (C. A. D. C.) cited in *Durham.*

In our view there is no reason for changing the burden of proving insanity under the 1961 Act from the rule existing prior thereto. The difficulties in the way of the State proving beyond a reasonable doubt that the unlawful act in question was not the product of mental disease or mental defect are readily apparent. See Law and Psychiatry by Professor Glueck (1962) pp. 112, 118. We find no error in the refusal to give the requested instructions.

The entry will be

> *Exceptions overruled.*
>
> *Judgment for the State.*
>
> *Case remanded for sentence.*