STATE of Maine

v.

Ronald J. COTE.

Supreme Judicial Court of Maine.

July 30, 1976.

Fernand R. LaRochelle, Asst. Atty. Gen., Augusta, for plaintiff.

James J. Shirley, Sanford, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE*, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Ronald J. Cote was indicted by the York County grand jury for the felonious homicide punishable as murder but after a jury trial he was convicted of the lesser included offense of manslaughter, from which conviction he has appealed. Mr. Cote assigns error in his conviction premised on two arguments, (1) the presiding Justice did not instruct the jury that assault and battery is a lesser included offense within the crime of manslaughter, and (2) the denial of a motion for new trial on the theory that the verdict was not supported by substantial evidence and was contrary to the weight of the evidence.

We deny the appeal.

### FACTS

On September 3, 1972, Robert Gagne was taken to a hospital in Sanford for emergency treatment. The attending physician, being informed that the patient had been assaulted, conducted a brief neurological examination with negative results, had head x-rays taken, sutured a laceration of the scalp, and allowed him to be taken home. The next afternoon at approximately 4:00 p. m. the patient was returned to this hospital unconscious, having convulsions and envincing "neurological signs of increased cranial pressures." Another physician diagnosed the condition, having in mind the previous history, as "epidural or subdural hematoma," and caused the patient to be transferred to the Maine Medical Center. Mr. Gagne there underwent

---

* Weatherbee, J., sat at argument and participated in consultation but died prior to preparation of opinion.

brain surgery and a subdural hematoma was removed, described by the surgeon as "pan-hemispheric, the shape of a pancake, depth was approximately 1 inch and approximately 3 or 4 inches in length and wide." This blood clot was submitted to a pathologist who made sections from "multiple areas" thereof which were examined microscopically. He concluded that the clot was of recent origin, namely, *"between a few hours and twenty-four hours, approximately thirty-six hours."*[1] (Emphasis supplied.)

Mr. Gagne did not regain consciousness following this surgery and died several weeks later, a pathologist being of the opinion "that the actual cause of death is related to a severe closed head injury with resultant subdural hemorrhage to the brain as the result of that."

Prior to Mr. Gagne's initial visit to the Sanford hospital he had been in an altercation with the defendant, the causation of which being sharply disputed. Witnesses for the State testified that the defendant entered an apartment seeking the decedent and, having found him, literally threw him out the front door onto a sidewalk and proceeded to administer a physical beating, including taking Mr. Gagne's head and banging the back of it repeatedly on a cement sidewalk. Apparently the defendant had felt that Mr. Gagne had assaulted the defendant's father and this assault was in revenge. Also, there was evidence from several witnesses that the defendant had taken off his belt and lashed the decedent with the buckle end.

The defendant's version was different. He contended that he entered the apart-ment where his uncle lived, only for the purpose of having a beer and there he inadvertently met the decedent. He then contended that the decedent assaulted him with a knife and he successfully disarmed him. As he was leaving the apartment, he was again assaulted by the decedent who was carrying a weapon which one witness described as a screwdriver. As the result of the momentum of the decedent's assault, the participants fell out the doorway, down the stairs, and onto the sidewalk. Ultimately the defendant disarmed the decedent and left. He denied any aggressiveness, claiming that his entire conduct was defensive.

The defendant was twenty-two years old, a military veteran, who weighed one hundred fifty pounds. The decedent, somewhat shorter, was described by one doctor as "really thin for a 35 year old man. We never did weigh him but he looked 110 pounds, what we call cachectic, almost wasted away with thin arms, thin abdomen." It was suggested that the decedent was a "thirty-five year old man with a seventy year old body."

There was evidence from one witness that about *two weeks* prior to September 3rd the decedent, while intoxicated, had become unconscious after falling into an automobile, presumably striking his head, but there was no other evidence of past trauma.

### POINT I

The Justice below did not instruct the jury that assault and battery was a lesser included offense in an indictment charging murder.

---

1. It was established, adopting either the State's or the appellant's version of the facts, that the altercation occurred about 10:00 p. m. on September 3rd. Mr. Gagne was never thereafter left unattended until the hematoma was removed at the Maine Medical Center on the evening of September 4th. A police officer conveyed him to the hospital on the third and likewise returned him therefrom to his mother's home. He was under the constant observation of his mother until, on September 4th, he went into convulsions and was returned by ambulance to the Sanford hospital, from where he was taken, unconscious, to Portland and there operated on. Thus, the time span testified to by the pathologist is entirely consistent with the State's theory that the assault which caused the hematoma was on the evening of September 3rd.

Preliminary to the trial the State moved to consolidate the murder indictment with another indictment alleging aggravated assault and battery (17 M.R.S.A. § 201). The Justice below, over objection of defense counsel, refused to do it, informing counsel:

"My position would be, in a proper case, if the evidence warranted it that I could instruct it and call it [assault and battery] a lesser included offense. On the other hand, the fact that evidence might be such as a matter of law, I would say it was not applicable. But I am not going to commit myself ahead of time."

In fact, he did not so charge and no objections were noted to the charge as given.

■ It can no longer be subject to doubt that manslaughter under appropriate circumstances is a lesser included offense under an indictment charging murder. *State v. McCarthy*, 256 A.2d 660 (Me. 1969); *State v. Conley*, 39 Me. 78 (1854). Since the jury on proper instructions returned a manslaughter verdict, it is clear that this was tantamount to finding the defendant not guilty of murder. Therefore, we must ask whether it was error to fail to charge on assault and battery as a lesser included offense within the crime of manslaughter. In *State v. Bowden*, 342 A.2d 281 (Me.1975), we determined that assault and battery is a lesser included offense within the crime of common law or invol-

untary manslaughter. Under appropriate circumstances, therefore, and as an abstraction, a defendant charged with manslaughter may be convicted of assault and battery. *See State v. Ferris*, 249 A.2d 523 (Me.1969).

■ We remind ourselves, of course, that no objections were taken to the charge as given, thus failing to comply with Rule 30(b), M.R.Crim.P. As a result, the appellant must now satisfy us that this omission to instruct on assault and battery was

"so highly prejudicial and so taints the proceeding as virtually to deprive [the defendant] of a fair trial."

*State v. Langley*, 242 A.2d 688, 690 (Me. 1968); *see also State v. Sargent*, 361 A.2d 248 (Opinion dated July 26, 1976).

■ It would seem axiomatic that if the cause of death was traced medically to trauma at the hands of the defendant, no entitlement arises to an instruction on assault and battery arising from that particular trauma. The jury was clearly instructed that only if the cause of death could be attributed to acts of the defendant could a guilty verdict be returned, whether it be murder or manslaughter.[2] Since the medical testimony clearly depicted the cause of death to be the subdural hematoma and since this hematoma was not more than thirty-six hours old, the jury would have been engaging in pure speculation not to have concluded that it was caused by the

**2.** After instructing the jury that the State had the burden of showing that the death of Mr. Gagne was the result of some act of the defendant, the Justice stated: "And your question is: Did the deceased die as a result of some act on the part of the defendant? Or did the defendant set in motion a train of events which led, with no effective intervening cause, to the death of the deceased? In other words, if the deceased died not from an act of the defendant but from some intervening cause, then the defendant did not kill the deceased. And that being an essential element

of the State's case your verdict would be not guilty. And another test of causation is: Was the relationship between the acts of the defendant and the death of the deceased such that but for the act of the defendant the deceased would not have died? And I think by applying those tests you can conclude whether or not there was a necessary causal relationship for you to find whether or not the defendant killed a human being, to wit, the deceased Robert Gagne." *See State v. Hachey*, 278 A.2d 397 (Me.1971).

blows to the decedent's head administered by the defendant on September 3rd.

By analogy to *State v. Hilliker*, 327 A.2d 860 (Me.1974), no manifest injustice results from the failure to charge on assault and battery since there was no reasonable possibility that a rational jury could have concluded that the defendant was only guilty of that offense. *See United States v. Carroll*, 510 F.2d 507 (2d Cir. 1975); *State v. Northup*, 318 A.2d 489 (Me. 1974); *State v. Park*, 159 Me. 328, 193 A. 2d 1 (1963).

### POINT II

■ Extended comment is unnecessary to meet the argument that the verdict was not supported by substantial evidence and was contrary to the weight of the evidence. The Justice below gave very clear and explicit instructions on self-defense. If the defendant and his witnesses had been believed, the jury would have been compelled to return a verdict of not guilty. On the other hand, the witnesses for the State[3] clearly depicted the defendant as the aggressor. Thus, the jury was faced with a pure question of fact and we have no right to substitute our judgment on the facts for the conclusion reached by the jury.

The entry is:

Appeal denied.

All Justices concurring.

---

3. Despite the defendant's denial that he ever made an inculpatory statement, a police officer testified: "I spoke to him regarding he being involved in an assault with one Robert Gagne. He readily admitted he had been in an assault with Mr. Gagne, that he had been with several other persons at the residence. He stated that prior to the confrontation he had with Mr. Gagne at 57 Pioneer Avenue, he had been to the VFW Club, so-called, in

Sanford, Maine, where he had first met Gagne earlier in the evening. He had had conversation with Mr. Gagne at the VFW Hall and Gagne had said discriminating remarks about Cote's father, that Mr. Cote did not like. . .

Mr. Cote stated he had gone to 57 Pioneer Avenue and had met Mr. Gagne there and had gone in to the apartment and pulled Mr. Gagne outside where he had assaulted him."