**STATE of Maine**

v.

**Leonide MICHAUD, Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 1, 1992.
Decided July 15, 1992.

---

Wayne S. Moss, Thomas Goodwin, Asst. Attys. Gen., Augusta, for plaintiff.

Ronald L. Bishop, Levine & Bishop, Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Leonide Michaud, Jr., appeals his conviction of murder, 17–A M.R.S.A. § 201(1)(A) (1983 & Supp.1991), entered in Superior Court (Kennebec County, *Alexander, J.*) after a jury trial. On appeal, Michaud argues that the court erred by i) failing to give an "adequate provocation" manslaughter instruction, and ii) erroneously instructing the jury on the issue of causation. Finding no merit in either contention, we affirm the conviction.

On December 2, 1989, the defendant went to Mid–Maine Medical Center in Waterville and shot his father three times in the chest, killing him. The victim suffered from an acute lung disease and was, on the day of the shooting, near death. In the week before his death, the victim had stated to defendant's sister that he was tired of living and did not want to live any more. The defendant in turn was told of this on the morning of December 2. That evening, several hours before the shooting occurred, the victim told the defendant, "I want to die, I am on 'no code.'" The defendant understood this to mean that his father wanted to die and to be a request that he

help him do so. The Defendant had a very close relationship with his father and had been quite traumatized by his illness. During that day the defendant drank heavily and took several prescription drugs. In addition, just before he shot the victim but sometime after their "no code" conversation, the defendant had a violent fight with his wife. At the conclusion of the fight, the defendant took a gun, went to the hospital, and shot his father.

A psychologist testified at trial that the defendant was, at the time of the shooting, in a very emotional state, suffering from extreme fear and anger. At the trial, the defendant relied on that testimony in requesting that the jury be instructed concerning "adequate provocation" manslaughter pursuant to 17–A M.R.S.A. §§ 201(3), 203(1)(B) (Supp.1991). The court denied the request. In addition, a doctor testified that although the father's death had been caused by bullet wounds, there was a reasonable possibility that he would have died that day even without being shot. On that basis, the defendant objected to the court's instruction on causation.

### I.

The defendant was convicted under 17–A M.R.S.A. § 201(1)(A) of intentionally and knowingly killing his father. It is an affirmative defense, on which the defendant had the burden of proof, reducing the crime from murder to manslaughter, if the defendant caused the death "while under the influence of extreme anger or extreme fear brought about by adequate provocation." 17–A M.R.S.A. §§ 201(3), 203(1)(B). Under 17–A M.R.S.A. § 201(4) (Supp.1991), provocation is adequate if it is "not induced by the actor" and it "is reasonable for the actor to react to the provocation with extreme anger or extreme fear." The defendant argues on appeal that his father's request to be killed, the fight defendant had with his wife, and the testimony regarding his emotional state suffice to generate the "adequate provocation" defense such that the question whether his conduct was reasonable should have been submitted to the jury. Thus he contends that

the court erred in denying his request to so instruct the jury.

■ Although the adequacy of the provocation under sections 201 and 203 is a conclusion to be drawn by the trier of fact, *State v. Flick,* 425 A.2d 167, 172 (Me.1981), the court must determine in the first instance whether the evidence is legally sufficient to generate the defense, thus requiring submission to the jury. *State v. Rainey,* 580 A.2d 682, 685 (Me.1990). As stated in *State v. Park,* 159 Me. 328, 333, 193 A.2d 1 (1963), whether there is any evidence "from which the jury could find provocation and other elements reducing the offense to manslaughter [is] a question of law for the determination of the court."

■ The test formulated for measuring the sufficiency of the evidence is whether a jury could rationally have found that the defense was established by a preponderance of the evidence. *See Tribou v. State,* 552 A.2d 1262, 1266 (Me.1989) (Wathen, J., dissenting); *State v. Stackpole,* 349 A.2d 185, 191 (Me.1975). There are definite limitations, however, on "the type of conduct deemed legally *adequate* to mitigate the punishment for a felonious homicide." *State v. Rainey,* 580 A.2d at 685; *State v. Hilliker,* 327 A.2d 860, 865 (Me.1974) (emphasis in original). It is a well-established legal proposition in our case law that "mere words" cannot constitute sufficient provocation to support the defense of adequate provocation. *See, e.g., Hilliker,* 327 A.2d at 866–67; *Park,* 159 Me. at 332, 193 A.2d 1. Although those cases pre-date the criminal code and involved words·that insulted or angered, we find their rationale persuasive and decline to depart from it in the circumstances where the words at issue are more readily characterized as a request or an attempt to persuade. We conclude, therefore, that the court properly determined that the father's statement to the defendant regarding his "no code" status was not legally sufficient to generate the "adequate provocation" defense.

■ We likewise affirm the court's refusal to give an "adequate provocation" instruction based on the defendant's fight

with his wife. To generate that affirmative defense, the defendant bears the burden of proving *inter alia* that the provocation did not arise as a result of his own conduct. 17–A M.R.S.A. § 201(4). Assuming without deciding that legally adequate provocation can arise from the conduct of one other than the victim, the defendant has failed to meet the burden of demonstrating that it was not he who instigated the fight. *Cf. Rainey*, 580 A.2d at 685; *Hilliker*, 327 A.2d at 866–67. As the State correctly points out, there is nothing in the record to support a finding, that is, no jury could rationally find, that the fight did not arise from the defendant's own conduct. Because the defendant failed to meet his burden, the court did not err in declining to give the requested instruction.

## II.

■ Based on the medical testimony that, even without the shooting, a reasonable possibility existed that the victim's death would have occurred that day, the defendant next argues that the court erroneously instructed the jury regarding "concurrent causation." Although we agree that the instant case involves a concurrent causation issue, we reject the defendant's implicit premise that the killing of a terminally ill person is not murder if his death is imminent.

■ On appeal we review jury instructions in their entirety to ensure they are adequate. *State v. Thompson*, 603 A.2d 479, 481 (Me.1992); *State v. Perry*, 486 A.2d 154, 156 (Me.1985). A court need not confine its instructions to the exact language of the criminal code, particularly when an additional explanation to the jury may "prevent misunderstanding of the legal principles involved." *State v. Foster*, 405 A.2d 726, 729 (Me.1979). In this case the court, by instructing the jury to determine the cause of the victim's death "at the time the death occurred," properly focused its attention on both the timing of the victim's death and the conduct that caused the death at that time.

The entry is:

Judgment affirmed.

All concurring.