Commonwealth of Pennsylvania *v.* Greenfield,
Appellant.

Argued October 15, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Philip Dorfman,* for appellant.

*Vincent A. Carroll,* Assistant District Attorney and with him *W. Bradley Ward,* Assistant District Attorney and *John Monaghan,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., November 20, 1931:

On the evening of January 8, 1931, about nineteen minutes after eight, an explosion, followed by a destructive fire, occurred in the factory and store of the Lincoln Upholstered Furniture Company, 200-202 North Second Street, Philadelphia. Joseph Guard and Samuel Greenfield were convicted under an indictment charging them with having set fire to the building; their motion for a new trial, based upon alleged after-discovered evidence, was overruled, and one of them, Greenfield, has appealed from the sentence imposed upon him, but has not been granted a supersedeas. The only assignment argued or covered by the statement of the questions involved charges the court below with an abuse of discretion in refusing a new trial.

An outline of the evidence for the Commonwealth is essential to an understanding of the alleged significance of the matters urged in support of the motion. The building in which the fire occurred is located at the northwest corner of Race and North Second Streets and also has an entrance at No. 205 Race. The exact time of the explosion is fixed by the testimony of the captain of the fire company, whose engine-house is located only sixty-five feet from the factory. This witness testified that he had crossed the street

in front of the engine-house and was about to step into a store "when this place at 200 and 202 and 204 North Second Street lit up, ignited, the windows flew out; in other words there was an explosion of some kind." He ran back to the engine-house and the apparatus started to the fire. On the way the captain signaled a city detective, Cunniffe, dressed in civilian clothes, whom he saw standing at the fire alarm box on the south side of Race Street, to send in the alarm and the detective signaled back that he had already done so. The "bulk window" on the first floor was blown out on Second Street by the force of the explosion; through this opening the firemen entered and found the interior in flames; the stairway was burning and ladders were used to the second and third floor windows. The captain further stated he noticed an odor of gasoline and of burning oils, the latter being characteristic of fires in furniture factories, and that they had "difficulty knocking the fire down" on account of "inflammable oils of some kind back in [one] corner."

The identification of appellant and his co-defendant rested upon the truthfulness and accuracy of the testimony of Patrolman Stiglinese, upon whose beat the factory was located. His testimony was to the effect that the vicinity "was pretty dead at night;" that he had come north on Third Street to Race and was walking east on the north side of Race toward Second, intending to make a report at 8:15 from a box at the northwest corner of Vine and Second. While passing 211 Race Street he looked at his watch and ascertained it was seven minutes past eight. His attention was then attracted to "two men coming out of 205 Race Street, ...... the Race Street entrance to the Lincoln Furniture Company." He continued: "Q. Where were you when you saw them? A. I was at 211 Race. Q. Had you ever seen these men before? A. I never seen them before the time of the fire. Q. Will you

look at the men now; you are sure they are the men you saw come out? A. Yes, sir; the small one came out first and Greenfield came out second, locking the door. When I got to the door there I tried the door. They turned the corner; when I tried the door the door was locked. I am walking east on Race; they are north on 2nd; I am following them on 2nd; they turned west on Vine Street; I am right in back of them; I get to the southwest corner of 2nd and Vine, where they were crossing the street, American and Vine, where they stood, the northeast corner of American and Vine.'' The corner of American and Vine is about 150 feet from the corner of 2nd and Vine at which the witness was standing. A few minutes later the men under observation went north on American and the witness made his ''8:15 call'' and started south on Second toward the furniture factory. Continuing, he said: ''When I got underneath the bridge I heard an explosion. This glass shot across the street; the flames shot out of the building. I runs up there; smelled gasoline; this fire just shooting out all over the building; so a civilian—I don't know who—I told him to pull the box, I stopped the first machine coming down Second; made him turn around, bucking traffic north on 2nd Street and west on Vine Street and north on American Street, where I was looking around to see if I could find them; I couldn't see nothing of them.'' Being unable to find the men he had seen coming out of the building, the witness returned to the fire.

In making his report he stated one of the men wore a light overcoat and ''looked something like'' the man who ran the store and factory, but, in the course of the investigation, went with the Fire Marshal to the home of the proprietor and satisfied himself that he was not one of the men who came out of the building. Eight days later he was called to the office of the Chief Fire Marshal and there positively identified Guard

and Greenfield, then under arrest, as the men he had seen coming out of the Race Street entrance to the factory. Both defendants denied they had been in the vicinity of the factory the evening of the fire. Guard testified he was at the Girard Avenue Theatre with his wife and several neighbors who were called to support his alibi. Greenfield asserted he left Philadelphia at six o'clock to go to his home in Atlantic City by bus and arrived there about eight, but called no witnesses to testify to his presence in Atlantic City that night. There was evidence of statements by appellant showing some familiarity with the fire insurance business through occasional employment by an adjuster and a broker. The issue was purely one of fact and was submitted to the jury by the learned trial Judge, McDevitt, P. J., with adequate and impartial instructions, particularly with reference to the nature of the defenses and the manner in which the jury should consider the evidence tending to support them. The jury evidently believed the testimony of the police officer and the judgment now under review should not be disturbed unless there was an abuse of discretion in denying appellant's motion for a new trial. His counsel at the trial was an able and experienced lawyer; upon his representation that evidence had been discovered since the trial which, in his opinion, required a new trial, the trial judge heard in open court the evidence of two members of a truck company, called out by the alarm, to the effect that when they arrived at the fire they found the Race Street door unlocked. Stiglinese had testified that he saw the man, subsequently identified as Greenfield, lock this door. It should be noted however that a number of firemen were then at work in the building, having entered by the wrecked front window. This testimony would have a tendency to contradict one of the positive statements of the patrolman, but in the light of other established facts would not be conclusive; the main is-

sue was not whether the Race Street door had been locked but whether Guard and Greenfield were the men the patrolman saw coming out of that door. In addition to this testimony, the motion was supported by three affidavits. George W. W. Frost, employed as janitor of the building at the southwest corner of Race and Second Streets, deposed that he was standing outside of this building for about twenty minutes before the fire; that he had occasion to mail letters in a box on the Second Street side of the factory immediately before the bulk window was blown out but saw no one going in or coming out of the factory. His further statement was that after the explosion "the policeman came running down Second Street shooting his gun ....... to attract the attention of the fire engine." Dennis A. McCarthy averred in his affidavit that he stood on the southeast corner of Race and Second Streets from seven o'clock until the fire occurred, having a view of both sides of the factory; that "nobody went in ...... or came out of that building" but shortly after the window had blown out he saw "the officer come running down Second Street." The third affidavit by Rose Bender was to the effect that on the night of the fire she was standing on the step of her store and news-stand at No. 242 N. Second Street and "the police officer walked down Second Street and stopped in front of [the] store;" that he was looking at a paper when the explosion occurred and then "started to run toward Race Street and fired his revolver while he was running." One difficulty with these affidavits is that none of them refers to the "policeman," whose actions are described, by name or identifies him in any way as Patrolman Stiglinese. It is a fair inference from the testimony that at least one other officer arrived at the scene while Stiglinese was searching with the commandeered automobile for the men who had gone up American Street. Detective

Cunniffe testified that he did not see Stiglinese at the fire but that another officer, Trainor, came up and he "gave the box over to him." Nor is there any material contradiction of Stiglinese in the testimony of Cunniffe that he sent in the alarm and not the civilian referred to by Stiglinese in his testimony. It is quite possible the alarm was sent in before the civilian, instructed by Stiglinese to "pull the box," had arrived.

In addition to the fact that the statements of Frost and McCarthy are largely negative, the record discloses no satisfactory reason why these witnesses could not have been discovered before, and their testimony taken at, the trial. Long before the trial appellant knew from what occurred at the office of the Fire Marshal that Stiglinese would testify the men who came out of the Race Street door ten or twelve minutes before the fire were Guard and appellant.

But even if we assume that the evidence proposed to be offered could not have been discovered before the trial by the exercise of reasonable diligence, and also that it goes to the merits, we are not convinced, after a review of the entire record, that it meets the tests which have prevailed in this Commonwealth, at least since Com. v. Flanagan, 7 W. & S. 415, 423. In disposing of a motion for a new trial, courts must consider not only the competency but also the legal effect of the proposed evidence. The inquiry is whether, taking the newly-discovered evidence in connection with that produced at the trial, the legitimate effect of placing such combined evidence before another jury would be to require a different verdict. We need not repeat what was said on this subject in Com. v. Mellon, 81 Pa. Superior Ct. 20, and Com. v. Smith, 89 Ibid. 190, 194. Giving the statements of the witnesses examined in court and the affidavits submitted their full face value, and considering them in connection with the testimony at the trial, we cannot see even a prob-

ability of a different verdict if a new trial should be directed. Being satisfied there was no abuse of discretion by the court below, we overrule all the assignments.

An examination of the original record discloses that this appeal was not perfected within the *time limited* by statute. As the Commonwealth has not moved to quash we have considered the merits, but our action in so doing is not to be considered as establishing a precedent.

Judgment affirmed.