STATE OF MAINE *vs.* JAMES DALE IRONS.

York.     Opinion, March 18, 1941.

*Joseph E. Harvey,* County Attorney for the State.
*Sewall, Varney & Hartnett,*
*Henry M. Fuller,* for respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.; WORSTER, J., concurs only in the result stated in the mandate.

MURCHIE, J.     This case comes to the court on appeal by a respondent convicted in the Superior Court under an indictment alleging rape. Following conviction, he filed a motion for a new trial in the usual form, which was later supplemented by a motion adding to the allegations that the verdict was against the law, the evidence and the weight of the evidence, two additional reasons as follows:

"4. Because said defendant did not have time to adequately prepare his defense, because he was notified of the holding of the trial only one day in advance, to wit, Tuesday, the sixteenth day of January, 1940, and said trial was held on the following day, Wednesday, the seventeenth day of January, 1940.

5. Because the said defendant has since the date of the trial made diligent search for new and other evidence, which was impossible for him to do prior to trial because of lack of sufficient time for preparing therefor, and said defendant has discovered one, Ralph W. Cummings, a disinterested person of York, who has knowledge of certain material and appurtenant facts pertaining to the conduct and whereabouts of the defendant at the time the alleged misconduct of the defendant was alleged to have taken place, and in support of said motion and said newly discovered evidence, hereto is annexed the affidavit of said Ralph W. Cummings as to the material evidence for the defendant's defense, which through no fault of the defendant was not produced at his trial."

Neither the first supplemental allegation nor the routine declarations of the usual motion for a new trial were pressed by counsel for the respondent. At his insistence that "The sole question . . . is the correctness of the . . . ruling on the supplementary motion . . . on newly discovered evidence," in which position counsel for the State joined, we have disregarded technical procedural questions and limited consideration to the single point alleged in paragraph numbered 5 above. It is unfortunate that on this ground also his motion includes a recital that the impossibility of obtaining the *new* evidence in question was *"because of lack of sufficient time for preparing"* for the trial (italics ours), since this may seem to relate back to the recital that he did not have time to prepare his defense "because he was notified of the holding of the trial only one day in advance." The indictment alleges an offense committed on December 3rd and the trial was held on the 17th day of the following month. The record shows that the respondent was confronted by the parents of the alleged victim the very evening of the event and then definitely accused of the assault so that it is clear by any test that practically one and one-half months were available to him for prep-

aration. The case contains no suggestion that the respondent made any attempt in the Trial Court to secure more time for investigation.

The record contains a full transcript of the testimony taken out before the jury, which returned a verdict of "guilty," and of that taken out on the supplemental motion. In such a case, as has heretofore been stated by this court, the question must be whether or not the decision of the presiding justice, from which the appeal was taken, was wrong "in view of all the evidence in the case and that presented on the motion." *State* v. *Dodge*, 124 Me., 243, at 246, 127 A., 899, at 901.

*London* v. *Smart*, 127 Me., 377, at 379, 143 A., 466, quotes with approval the tests enumerated in Ruling Case Law (20 R. C. L., 290) to be applied to newly discovered evidence to determine whether or not it lays a proper foundation for granting a new trial. These tests are (1) that the evidence is such as will probably change the result if a new trial is granted, (2) that it has been discovered since the trial, (3) that it could not have been discovered before the trial by the exercise of due diligence, (4) that it is material to the issue, and (5) that it is not merely cumulative or impeaching. It may be doubtful if the so-called newly discovered evidence in this case meets the test that it could not have been discovered before the trial by the exercise of due diligence. If the allegations of the first supplemental reason above quoted be interpreted literally, it may appear that the respondent made no effort to prepare his defense until after he was notified that the trial was to be held on the succeeding day, but the record itself, in the evidence taken out before the justice who heard the motion, discloses that it was not in fact discovered until after the trial and creates a reasonable inference that due diligence could not have produced it earlier. Accepting that record as satisfying the two tests of discovery and diligence, it remains only to apply the other three, and for this purpose an analysis of the testimony in the Trial Court is a necessary preliminary.

The record shows that the issue before the jury was clearly and narrowly drawn. Many facts are not in any manner in dispute, and these may be enumerated as follows: The respondent resided in York Village. The victim, whose home was in Eliot, approximately five miles distant from the home of the respondent, had worked in his

home as a combined domestic and nursemaid for three weeks prior to the event. On each Sunday the respondent had driven her from his home to her own sometime in the afternoon, and had called for her at her home in the middle of the evening. On the day in question, he had taken her to her home around three o'clock in the afternoon, and had arranged to call for her somewhat earlier than usual in order that she might be back at his house in time to permit him and his wife to attend a moving picture show. The victim left her home that evening, her clothing in proper array, at a time fixed by her and her father as between half past six o'clock and seven, in an automobile which called for her. She returned approximately within an hour, her clothing and person in disorder, in a physical condition, disclosed by the examination of a physician less than two hours after her return, which is consistent with her testimony. The evidence of the physician unquestionably proves that, whether the cause of that condition was rape or an act committed with her consent, and whether or not this respondent was a party to it, the experience through which she had recently passed was the first of its kind in her lifetime.

On these undoubted facts, the issue of guilt or innocence on the part of this respondent depended almost entirely on the testimony of the victim herself, although it may be said that there was some possible corroboration of her story in the testimony of her father, who claimed to identify the motor vehicle in which his daughter left her home shortly before the occurrence as that of the respondent. The testimony of the victim is definite and positive, that the respondent called for her at the prearranged time, and that instead of proceeding to drive her to his home, he drove his automobile into a little-used highway along the line of travel between the two homes and there committed the assault. The verdict necessarily involves a finding that the respondent at the time in question was away from his home long enough so that he could make two round trips between the two homes, traveling a distance of approximately twenty miles, in addition to the time necessary for the detour and assault.

The defense, in addition to the denial of the respondent, is based entirely on the claim of an alibi, wherein his own statement that he was at home at the time the assault, if there was an assault, must have been committed, and for a matter of hours prior to the time

thereof, and thereafter, until the parents of the victim called at his home to accuse him, he was not out of the house for a period of more than approximately ten minutes, an interval obviously insufficient to provide time for the trip and assault, is supported by the testimony of two additional witnesses. It is corroborated *directly* by his wife, who supports his "ten-minute" claim, and *indirectly* by a neighbor who states that he called at her home to procure milk at exactly quarter past seven. According to the testimony of the victim, he had procured this milk and had it in the automobile with him when he called at her house between half past six and seven o'clock.

On these conflicting stories the jury which heard the witnesses and had opportunity to observe them on the stand declined to accept the testimony of the respondent, his wife and the neighbor, and clearly accepted in full the testimony of the victim. Perhaps it may be assumed that the jurors found corroboration for her story, not only in the evidence of her father, heretofore noted, but in the fact that she correctly described the manner in which the respondent was dressed that evening, and that her departure from home came at the very time which by respondent's own story had been fixed as the time when he was to call for her.

The so-called newly discovered evidence is the testimony of an employee of the neighbor-witness who states that he was in the barn to which the garage of the respondent was attached from about seven o'clock to a quarter of eight in the evening when the offense is alleged to have been committed; that when he entered the barn, he noticed that the car of the respondent was in the garage, and that he later heard someone come out of respondent's house, get into respondent's car, drive off somewhere and return "in about five minutes." The door of the barn in which this witness was at work, taking some equipment off a truck located therein, was closed, and counsel for the respondent stated for the record, when the evidence was taken out, that no claim was made that this witness saw the respondent at any time during that interval. On cross-examination, this witness admitted that he identified the automobile of the respondent only from the fact that it was located in respondent's garage.

The justice who heard the testimony offered in support of the supplementary motion presided at the trial before the jury. Like the members of the jury, he was enabled to observe the conduct and de-

meanor of the witnesses on the stand, and to some extent had a better means of weighing the value of the evidence than is possible from examination of the transcript of the testimony. Careful consideration of all the evidence in the case and of that taken out on the motion seems to indicate that judgment on his part, that it did not meet the test of creating a probability that it would alter the verdict, is correct. In *Parsons* v. *Railway*, 96 Me., 503, page 507, 52 A., 1006, page 1007, where a new trial was granted, the court interpreted the requirements of this particular test as follows:

"The true doctrine is, that before the Court will grant a new trial upon this ground, the newly-discovered testimony must be of such character, weight and value, considered in connection with the evidence already in the case, that it seems to the court probable that on a new trial, with the additional evidence, the result would be changed; or it must be made to appear to the court that injustice is likely to be done if the new trial is refused. It is not sufficient that there may be a possibility or chance of a different result, or that a jury might be induced to give a different verdict; there must be a probability that the verdict would be different upon a new trial."

This court has heretofore declined to grant a new trial in a case where the newly discovered evidence involved the claim that one of two witnesses on a very material point, the value of whose testimony depended on his ability to identify the respondent, was quoted after the conviction as saying that he must have been mistaken in his identification, *State* v. *Beal*, 82 Me., 284, 19 A., 458.

Bearing in mind that the jury had before it corroboration of respondent's statement that he had not been away from home more than ten minutes (which might have been considered biased testimony because of the relationship of the witness to the accused), and of his statement as to the time when he called for the milk (which came from a presumably disinterested witness), it is unlikely that the *new* evidence, with no positive identification of respondent's automobile and no pretense of identification of the respondent himself, would have changed the verdict; and it seems to this court that the action of the justice who heard the motion, particularly in view of the fact that the new evidence has no value except on the assump-

tion that it was the respondent himself who, at the particular time stated, drove his motor vehicle out of his garage and returned within a few minutes, was proper.

*Motion overruled.*
*Appeal dismissed.*
*Judgment for the State.*