STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FREDERICK BUNK, ROBERT JELLISON AND CLARENCE SMITH, DEFENDANTS-APPELLANTS.

Argued April 10, 1950—Decided April 24, 1950.

See also 73 *A.* 2d 249.

Mr. *Edward J. Gilhooly* argued the cause for the appellant Bunk (*Mr. James L. McKenna,* attorney).

Mr. *Louis Auerbacher, Jr.,* argued the cause for the appellant Jellison.

*Mr. Edward J. Gilhooly* argued the cause for the appellant Smith.

*Mr. Duane E. Minard, Jr.,* argued the cause for the State, *Mr. C. William Caruso* on the brief.

The opinion of the court was delivered by

OLIPHANT, J.  Defendants-appellants were convicted of murder in the first degree without recommendation and the death penalty was imposed.  An appeal was taken to this court and argument was heard thereon on January 3, 1950, but before the opinion was handed down the defendants made application to this Court for a new trial or to have the cause remanded to the Essex County Court, where the trial had been held, so that they might make application there for a new trial on the basis of newly discovered evidence.  By order dated January 23, 1950, the cause was remanded to the trial court for the purpose of the defendants making their application there pursuant to *Rule* 2:7–11.  The motion was heard by Judge Francis, who had presided at the trial, on affidavits, briefs and argument, and in an opinion in which he fully reviewed the facts in the case and the law applicable thereto it was denied by order dated February 15, 1950.  This appeal is from that order.

The motion was predicated upon the affidavit of Thomas Yanuzzi, one of the holdup gang, who fled after the murder on August 8, 1948, and who was not apprehended until March 8, 1949, in the State of Texas, after the trial and conviction of his co-conspirators, the defendants here.  This affidavit was made January 11, 1950, and sets forth that:

"3. I was present at the Penn Tavern, in the City of Newark, on August 8, 1948, and as I was running out of the tavern, an unknown person, who was standing at the front end of the bar, near the vestibule, held a gun in his hand which he fired, in the direction of the shuffleboard room.  As I ran past this unknown person, the powder burns from the shot which he fired scarred the tissue of my face, causing it to swell in the area over my left eye.  The person who

fired this shot was neither Smith nor Bunk. I recall that at the time that I ran from the tavern the defendant Smith was grappling at the bar with two patrons.

"4. I believe that I could identify the person who fired the shot as I ran from the tavern if I saw him again."

It is supported by two other affidavits, one by a cousin of Yanuzzi, one Rusignola, an attorney at law of this State, who says that on August 8, 1948, he observed that Yanuzzi had a bruised hand and a burn and discoloration over his left eye, and another by one Racioppi, who states that on the same day he observed a red blotch over Yanuzzi's left eye.

Counter-affidavits were presented by Captain of County Detectives Cocozza, Lieutenant of County Detectives McLaughlin and Lieutenant of Police Wangner, all of whom went to Texas to return Yanuzzi to this jurisdiction. These show that in their interview with Yanuzzi in Texas and during the return trip he failed to state anything about an unknown person having fired any shots in the Penn Tavern but did give his story of the events that happened there up to a time when he claimed to have "blacked out." He said he had heard but one shot which came from the shuffleboard room and that after this he blacked out and knew nothing until he came to in the get-away car.

A motion for a new trial is addressed to the sound judicial discretion of the trial court. Such judicial discretion cannot be arbitrary, vague or fanciful but rather must be governed by and in accord with established principles of law. Concisely, it is concerned with the question whether justice requires that relief be given under the particular facts established. *State v. Then,* 114 *N. J. L.* 413 (*Sup. Ct.* 1935); *La Bell v. Quasdorf,* 116 *N. J. L.* 368 (*Sup. Ct.* 1936); *State v. Hunter,* 4 *N. J. Sup.* 531 (*App. Div.* 1949); *State v. Hogan,* 1 *N. J.* 375 (*Sup. Ct.* 1949); *State v. Collins,* 2 *N. J.* 406 (*Sup. Ct.* 1949). The exercise of such discretion will not be disturbed on appeal or review unless it has been clearly abused. *State v. Collins, supra.* So in reality there is but the single question before us: Was there an abuse of sound

judicial discretion in the denial of the appellant's motion by the learned trial court?

It is agreed by both the appellants and the State that the tests necessary to be met to entitle a party to a new trial on the ground of newly discovered evidence are as enunciated in *State v. Hunter, supra,* that the new evidence (1) must be material to the issue and not merely cumulative, nor impeaching nor contradictory; (2) that it has in fact been discovered since the former trial and could not have been discovered before such trial by the exercise of due diligence; (3) that it would probably change the result if a new trial was granted. This rule is amply supported by the authorities. *Christie v. Petrullo,* 101 *N. J. L.* 492 (*Sup. Ct.* 1925); *Paradise v. Great Eastern Stages, Inc.,* 114 *N. J. L.* 365 (*E. & A.* 1934); *Albrecht v. Raab,* 127 *N. J. L.* 292 (*E. & A.* 1941); *Rooney v. Herrmann,* 20 *N. J. Misc.* 335 (*Cir. Ct.* 1942); *Wilkotz v. Ziss,* 137 *N. J. L.* 3 (*Sup. Ct.* 1948).

It is conceded that proffered evidence meets the first two tests so that we are concerned with whether or not it meets the third. It is claimed by appellants that this is too harsh a rule and reliance is placed on the case of *State v. Lammens,* 3 *N. J. L. J.* 100, 251, wherein it is claimed it was held that the right to a new trial should not depend upon the probability of a different result being reached but the possibility thereof. An examination discloses that the statement said to have been made by Mr. Justice Depue in that case is not taken from a written opinion nor is it a direct quote from the stenographic record. It is the reporter's version of what was said and the full note sets out that the Justice said a new trial would be ordered if "the evidence is newly discovered and might have led the jury to a different conclusion, *and ought to have done so."* (Italics supplied.) By the use of these words it is clear that what the jurist had in mind was that the new evidence would probably change the result.

This language is much the same as that used in *State v. Stain,* 20 *A.* 72 (*Maine* 1890), where it was said "and it is a well established rule that a motion for a new trial should

not be granted on the ground of newly discovered evidence, unless the evidence is such as ought to produce, on another trial, an opposite result on the merits." The great weight of authority is in conformity with the rule of probability rather than possibility. *People v. Shilitano*, 218 *N. Y.* 161 (*N. Y.* 1916); *State v. Goldberger*, 173 *A.* 216 (*Conn.* 1934); *State v. Irons*, 18 *A.* 2d 798 (*Maine* 1941); *Common. v. Greenfield*, 157 *A.* 50 (*Pa.* 1931); 23 *C. J. S., p.* 1253, § 1461; *State v. Reynolds*, 116 *A.* 116 (*Vt.* 1922).

The same rules or tests apply in both civil and criminal causes. A rule of civil practice, 3:60–2, empowers the trial court to grant a new trial for "newly discovered evidence which would probably alter the judgment * * *," while a rule of criminal practice, 2:7–11, provides that the court "may grant a new trial to a defendant if required in the interest of justice."

Because the two rules are couched in different language is no indication on the part of the Court to apply different tests in civil and criminal causes, to abandon the long standing rules applicable to new trials on the ground of newly discovered evidence, or to apply more liberal tests in criminal cases than in civil causes.

Our rule of criminal practice was taken from Rule 33 of the Federal Rules of Criminal Procedure. Prior to the adoption of this rule the practice in the federal courts with respect to new trials for newly discovered evidence was precisely the same as in this State. The same elements had to be established. *Cyclopedia of Federal Procedure* (2d *Ed.*), *Vol.* 9, § 4505; *Glenberg v. U. S.*, 281 *Fed.* 816 (*C. C. A. 6th Cir.*, 1922); *Evans v. U. S.*, 122 *Fed.* 2d 461 (*C. C. A. 10th Cir.*, 1941); *cert.* den., 314 *U. S.* 698; *Weiss v. U. S.*, 122 *Fed.* 2d 675 (*C. C. A. 5th Cir.*, 1941); *cert.* den., 314 *U. S.* 687, 62 *Sup. Ct.* 300.

The federal courts in administering the rule have required the same conditions to be met as under the pre-existing practice (*U. S. v. Lowrey*, 84 *Fed. Supp.* 804 (*D. C. W. D. Pa.* 1949); *U. S. v. Memolo*, 72 *Fed. Supp.* 747 (*D. C. Pa.*

1947); *Helwig v. U. S.,* 162 *F.* 2d 837 (*C. C. A. 6th Cir.* 1947); *Howell v. U. S.,* 172 *F.* 2d 213 (*U. S. C. A. 4th Cir.* 1949). Thus it is plain that the same considerations should control the motion made below as before the new rule was adopted.

■ In determining whether or not the alleged newly discovered evidence would probably change the result reached at the trial of these defendants the credibility of that evidence must be evaluated, and this question must be resolved by the trial judge in the first instance and not by a jury as asserted by the appellants. To hold otherwise would make a mockery of justice and for the easy unsettlement of judgments, for new evidence, even though obviously testimonially untrustworthy, would mean a new trial in every instance to have the credibility of the witnesses submitted to a jury. We concur in what was said by Judge Cardozo in his concurring opinion in *People v. Shilitano, supra,* concerning the function of the trial judge upon an application for a new trial upon the ground of newly discovered evidence: "* * * I do not mean that to justify a new trial, he must have been convinced—firmly or with a sense of certainty convinced—that the first story of the witnesses was false and that their new story was true. He might act upon a reasonable probability. But if, on the contrary, he was *convinced* that the second tale was false, that a criminal league had been formed to set at naught the verdict of the jury and the judgment of the court, his duty was clearly marked * * *. *He was not at liberty to shift upon the shoulders of another jury his own responsibility. That would have been to make the conspiracy triumph.* He was charged with a responsibility to seek the truth himself." See 23 *C. J. S., p.* 1253, § 1461.

■ We do not deem it necessary to review in detail the evidence produced at the trial of these defendants and to analyze the effect of the contents of Yanuzzi's affidavit as applied to those facts. They were exhaustively recounted and painstakingly dealt with in the opinion of Judge Francis below. Suffice it to point out that Yanuzzi is awaiting trial

for this crime on an indictment for murder. His proffered evidence is palpably self-serving and comes at a very late hour. It is obviously given in an endeavor to save his own life and those of his co-conspirators. Neither while in Texas after his arrest there, when he was interrogated by the authorities, nor while en route back to this jurisdiction did he mention an unknown person as having fired a shot in the tavern. His story, as hereinbefore stated, was that he had blacked out after he heard "a shot coming from the shuffleboard room where Smitty was." When asked what he did when he heard the shot he answered, "I don't know, I blacked out," and the next he knew he was in the getaway car.

In spite of this claimed blackout he now avers that as he was running out of the tavern an unknown person stood at the front end of the bar and fired a shot which caused powder burns on his face. This story, this abandonment of the black-out theory, was given ten months after the murder, while awaiting trial and after learning the details of his confederates' trial and the theory of their defense. It is significant that the defendants at their trial, unwittingly as it now appears, corroborated Yanuzzi's blackout story as told to his interrogators. They testified that when Yanuzzi reached the getaway car he asked "Did anybody get shot? Did I kill anybody?" None of these defendants made any mention of burns on Yanuzzi's face and none of them testified as to any unknown third person having fired a shot. Bunk, who was standing near the entrance covering Yanuzzi's and his own retreat, did not see any such person but testified that Yanuzzi was firing his own gun as he went out.

As to the affidavits of Rusignolia and Rasioppi it is strange indeed that they did not inquire as to how their relative and friend sustained his facial swelling and discoloration which, in their affidavits, they claim to have seen.

The statement in Yanuzzi's affidavit is obviously incredible. He does not deny having told the police officers that he had blacked out. He had nothing to lose and everything to gain both for himself and these defendants in making the affidavit.

They all are in danger of suffering the extreme penalty for murder. Perjury has few terrors for those in such a position. Even such honor as exists among thieves is not too precious to be sacrificed for a chance at life. If new trials were to be granted on such evidence as is proffered here the number of times a new trial must be had would depend solely on a defendant's ingenuity, industry and imagination.

The other points raised on the appeal have no merit.

The action of the trial judge in denying the motion is affirmed and the appeal dismissed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT. WACHENFELD and BURLING—6.

*For reversal*—None.