**STATE of Maine**

**v.**

**Howard LUND, Jr.**

Supreme Judicial Court of Maine.

June 22, 1970.

Richard S. Cohen, Asst. Atty. Gen., Augusta, for State.

James Blenn Perkins, Jr., Boothbay Harbor, for defendant.

Before WILLIAMSON, C. J., and WEBBER,. MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WILLIAMSON, Chief Justice.

The defendant Howard Lund, Jr. was convicted of the murder of Jane Kennedy (or Jane Lund), whom we will refer to as the defendant's wife, by a jury in Lincoln County Superior Court in 1968. His appeal presents four basic.issues, as follows:

(1) Inadequacy of counsel at trial;

(2) Obvious errors at trial;

(3) Unlawful search and seizure and other errors at trial;

(4) Failure to grant a new trial on ground of newly discovered evidence.

After the trial and filing of an appeal, the defendant became dissatisfied with the services of his court-appointed counsel and sought his dismissal from the case. The Court granted counsel's request to withdraw, and appointed present counsel, who has carried forward the motion for new trial on the ground of newly discovered evidence and the appeal.

No appeal from denial of defendant's motion for a new trial on the usual grounds was taken by trial counsel. We deem it proper, nevertheless, to review the entire record under the rule applicable to review in order that we may pass on the points of appeal with better understanding.

"On appeal, where no exceptions are reserved, the only question before the court is whether, in view of all the testimony in the case, the jury is warranted in believing beyond a reasonable doubt, and therefore in finding, that the respondent committed the crime alleged in the indictment." State v. Hudon, 142 Me. 337, 52 A.2d 520; State v. Mulkerrin, 112 Me. 544, 92 A. 785.

The jury could properly have found as follows:

The defendant and his wife came to Wiscasset in early June 1968 and rented a camp on June 6 on Willow Lane Road. The body of Jane Lund wrapped in aluminum foil insulation was found in a shallow grave with a sheet metal covering in a wooded area over eighty feet from the camp. Jane Lund had been killed by a rifle bullet. No trace of powder appeared on the sweater covering the body and through which the bullet passed.

On June 13 the defendant stated to two officers that his wife had left home with a man. He made arrangements for the daily care of his infant child. No search for her was undertaken. The defendant told officers on June 15 in substance that he preferred that a missing persons bulletin not be put out. On June 18 at the request of the defendant, the sheriff's department investigated his complaint of a shooting at his home. At about one o'clock on the same day the body was discovered.

Jane Lund was shot and killed in the Lund camp in the presence of the defendant and the infant. The defendant buried the body of his wife in the hidden grave.

The defendant testified that his wife committed suicide. There was ample evidence negating the possibility of self-destruction.

"A careful review of the record shows sufficient evidence upon which the jury was justified in returning a verdict of guilty." State v. Mottram, 155 Me. 394, 156 A.2d 383.

### (1) *Inadequacy of counsel at trial*

■ The issue of inadequacy of counsel at trial is not properly before us on appeal. No complaint was made at trial by the defendant or until after the filing of an appeal. Counsel, charged with incompetency by the disappointed defendant, as is so often the case, has had no opportunity to defend himself. Further, the record is not complete for decision on a charge which touches the ability and adequacy of performance of a member of the Bar. "If we were to consider the point now, counsel, whose professional ability and integrity are impugned, would be afforded no opportunity to be heard." Harris v. State, 2 Md. App. 408, 234 A.2d 781.

The defendant is not hereby prejudiced against raising the issue in post-conviction habeas corpus proceedings.

### (2) *Obvious errors at trial*

The defendant, in his second point of appeal, "relies on Rule 52(b) that the Supreme Court will note and act on the obvious errors or defects affecting the substantial rights of the Appellant as noted under point 1. dealing with inadequate representation be regarded as adequate or inadequate by the Supreme Court thereunder."

Rule 52(b) M.R.Crim.P. reads:

"(b) *Obvious Error*. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The rule is applicable "where, and only where, manifest error in law has occurred in the trial of cases and injustice would otherwise inevitably result, * * *" State v. White, Me., 217 A.2d 212, 213; State v. Boisvert, Me., 236 A.2d 419; 3 Maine Pract.Rules (Glassman) § 52.3.

The "obvious errors" of which defendant complains are stated in the first point of appeal in terms of inadequacy of counsel at trial. We are forced therefore to restate the complaints in terms of "obvious error". For example, as inadequate representation, the complaint is the failure to object to a hypothetical question on voir dire. As "obvious error," it becomes the admission of the question and answer. Similarly, the other complaints must be cast in different terms.

It is unnecessary, in our view, to rehearse in detail the thirty-five complaints of obvious error at trial. We have carefully reviewed the record and here do no more than discuss the complaints in summary fashion.

■ The State inquired of each prospective juror on voir dire in substance whether assuming circumstantial evidence of the commission of murder by the defendant sufficient under instructions of the judge to convict, the juror would be deterred from convicting the defendant in the absence of eye-witness evidence.

The State sought by the question to ascertain the bias, if any, of the juror against a particular type of evidence. Obviously in the question the State made it apparent that the State's case might rest on circumstantial evidence.

The question was unobjectionable. The defendant could not be harmed by an inquiry which might disclose an unwillingness to "take the law" from the presiding Justice.

A deputy sheriff testified in substance that the defendant complained of a shooting at his camp, and that at defendant's request in company with another officer he made an investigation. The complaint and request were made before the authorities had knowledge of the death of Jane Lund, and before suspicion of any criminal act attached to the defendant.

Surely it would be a strange rule that on a request of X to the police for investigation of an incident at his home, the police must notify X of his right to refuse permis-

sion to make the investigation, and X must be shown to have waived counsel. Failure to object to the evidence on these grounds is precisely the basis of defendant's charge of incompetency, and so likewise is the basis of the complaint of obvious error. Cases cited by the defendant in which the police sought consent of the suspect are not in point. Schoepflin v. United States (9 Cir. 1968), 391 F.2d 390 (bank robbery— stolen goods); United States v. Barton (D.C.D.Mass.1967), 282 F.Supp. 785 (automobile trunk).

■ The defendant asserts "obvious error" in the admission in evidence: (1) of the testimony of Mr. Haines, a detective on the State Police force, in support of his application for a search warrant; (2) of the testimony of two law enforcement officers for reasons applicable to Mr. Haines' testimony; (3) of the rifle and aluminum foil insulation as exhibits; (4) of certain testimony bearing on the establishment of the corpus delicti; (5) of the testimony of an expert pathologist on the ground of lack of qualification; (6) of a .22 bullet, a red sweater and a blue blouse taken from the body of Jane Lund; (7) of tests by a ballistics expert; (8) of exhibits taken from the premises of the defendant. The questions of evidence present no "obvious error" under the rule.

The defendant further complains of a statement by the Court in the absence of the jury during a hearing on a motion to suppress evidence to the effect that custody of the defendant on an unrelated civil matter on June 18 before he was charged with murder had no bearing on the issue before the Court.

Many of the complaints of inadequate representation by counsel cannot, in our view, be turned into charges of obvious error. The defendant complains: (1) that counsel failed to move to suppress evidence before trial, although it appears that he did so with approval of the Court during trial, and (2) that counsel failed to argue and to develop evidence of lack of permission to

search, of waiver, and of defendant's mental capacity to waive rights. Later in the opinion we discuss search and seizure, and hold there was no error.

■ Complaints of counsel's failure to rest after motion for verdict of acquittal at the close of the State's case, to renew the motion at the close of the case, and to have had recorded the opening and closing arguments of counsel for the State and the defendant require no comment. Plainly, they do not constitute "obvious error" under our trial practice.

■ The complaint against counsel for failure to keep the defendant from the witness stand cannot be stretched and turned into an "obvious error," chargeable to the Court. It cannot be said to be a manifest wrong resulting in a miscarriage of justice for a jury to hear the defendant.

Whether it was the wiser course for the defendant to testify is another matter. We are not here concerned with the Fifth Amendment. The "obvious error" rule was designed to ferret out error, and not to limit the search for truth.

■ Complaints of inadequate preparation by trial counsel are no more than particular complaints of inadequate representation. They are reached in post-conviction habeas corpus, and not in this appeal. The Court below did not err in refusing to consider competency or incompetency of counsel at trial on defendant's motion for a new trial for newly discovered evidence.

■ Lastly, failure of trial counsel to move for a new trial on the usual grounds is turned into an "obvious error" requiring a new trial. There is no relief under the rule. As we stated earlier in the opinion, the jury was justified in returning the verdict of guilty of murder.

In pointing out that post-conviction habeas corpus is the road open for determination of many of the complaints of the de-

fendant, we nevertheless recognize that there may be errors so plainly established that they may be reached on appeal. We do not bar the way for consideration of such complaints which, however, we do not find before us.

There were no obvious errors at trial from which "injustice would otherwise inevitably result" in the absence of a new trial.

### (3) *Unlawful search and seizure and other errors at trial*

The defendant moved to suppress evidence of a rifle taken from a car and aluminum foil insulation taken from a cabin obtained under two warrants. The Court after a careful hearing found no violation of the defendant's constitutional rights and dismissed the motion. We agree.

The defendant maintains that because no copy of the warrant was served upon him before the search of the car and cabin, the property was illegally seized. A copy of the warrant and inventory in each instance was served on the defendant on the morning after the search. In State v. Martelle, Me., 252 A.2d 316, no copy of the warrant or receipt for the property taken was ever served on the defendant, nor were any left in her apartment.

The Court said, at p. 320:

"Nevertheless we hold that non-compliance with the ministerial demands of the rule [41(d)] did not invalidate the search and seizure under the warrant."

At the time the warrants were issued and executed the defendant was in custody on a matter unrelated to the death of Jane Lund. His arrest on the charge of murder came later.

The defendant offers no reason, nor do we find any reason, why the fact he was in custody had a bearing on the validity of the search and seizure procedures. His aid was neither sought nor required in obtaining and executing the warrants. Whether he was in or out of custody at the time was not material.

There were two warrants issued; one relating to the house or camp and the other the automobile. The defendant argues that each warrant was invalid on its face and that each affidavit failed to set forth proper grounds or to describe the property sufficiently.

The search warrants were issued on the basis of affidavits of Earl A. Haines, a detective on the State Police force, and on his information alone. We do not have here the problem of the informer's tip. State v. Hawkins, Me., 261 A.2d 255.

Mr. Haines had observed the body of Jane Lund buried in a wooded area eighty-two feet from the camp where she lived with her husband Howard Lund, Jr. There was a bullet hole in the body which was wrapped in aluminum foil insulation. These facts were known to the affiant.

The complete description of the property allegedly concealed reads: " * * * a firearm or firearms of unknown calibre used in the killing of one Jane Lynn Lund; and aluminum foil insulation paper identical to that used to conceal the body of the above Jane Lynn Lund."

The affiant further stated that he had probable cause to believe that the firearm or firearms was used in the killing of Jane Lund and "that the above described aluminum foil insulation paper is non-testimonial evidence which will aid in the apprehension of person or persons who killed the said Jane Lynn Lund." Given the facts of the body with the bullet hole, wrapped in aluminum foil insulation material, and the camp nearby, it cannot be said there was not probable cause or reasonable ground to believe that the death weapon and insulation material were located in the house.

The second search warrant reads in part: " * * * your affiant having observed on June 18, 1968 through the window of

the above described automobile, a brown cardboard box with the word 'Savage' on the said thereof; said box located on the rear floor of the said automobile."

The affidavit sets forth probable cause to believe that the automobile in question located forty feet from the house was owned by Howard Lund, Jr. and was used to conceal "a firearm or firearms used to kill one Jane Lynn Lund; said firearm or firearms being non-testimonial evidence which will aid in the apprehension of the killer of the above Jane Lynn Lund."

Here again, it was reasonable for a police officer to seek evidence of the death weapon in the car based upon his observation.

It is urged, however, that the warrants, at least with reference to the death weapon, are based upon no more than a fishing expedition by a state detective in that he sought the death weapon, both in the house and in the automobile.

In our view the circumstances surrounding the finding of the body, the bullet wounds, and the other facts which had been ascertained, and were known to the affiant, clearly would lead the untrained citizen, let alone the professional police officer, to consider there was reasonable ground or probable cause to find the death weapon in one or the other of the places named, and to find the. insulation material in the house.

The constitutional prohibition against unreasonable searches and seizure does not require that common sense be disregarded. The warrants in our considered view were issued properly under Rule 41, M.R.Crim.P. and violated no constitutional rights of the defendant. State v. Hawkins, supra, and cases cited therein.

### Mistrial

The defendant contends that the Court erred in denying his motion for a mistrial. Detective Haines, on arresting the defendant on a warrant, first inquired if he was Howard Lund, Jr., to which the defendant gave an affirmative response. The charge of murder was then read to him. The defendant then received the Miranda warnings.

"THE WITNESS [MR. HAINES]: Mr. Lund was advised that he did not have to say anything unless he wanted to, and that if he did so it could be used in a court of law against him. He was also advised of his right to have an attorney and that, if he could not afford one, one would be appointed for him."

No question arises as to the sufficiency of the warnings. After the warnings were given, the defendant said, "That is a pretty serious offense, isn't it." At no time was the defendant interrogated after the warnings were given.

The objection of defense counsel was on the basis that the giving of the warnings, without evidence of an examination or questioning, had a tendency to indicate a refusal to answer.

In defense counsel's words:

"MR. CARLTON: * * * I am objecting on the basis that he now says there was no interrogation and there was nothing done pursuant to these warnings which, in essence, is the same as putting them into evidence, that these warnings were given and that it tends to prejudice the Defendant by virtue of the fact that he did not respond, which he has no obligation to respond.

"THE COURT: You have now come the full circuit, Mr. Carlton. I would expect you to object, and would want you to object, if the warnings were not given, and now I find you are in a position where you are objecting because they were given.

"MR. CARLTON: That is correct.

"THE COURT: Your motion for a mistrial is denied."

The record does not indicate in any way that the State was endeavoring to show by

the evidence in the Miranda warnings that the defendant had failed to deny the charges against him. The purpose of the warnings was to establish that the defendant had been fully advised of his rights before the State introduced in evidence the statement "that is a pretty serious offense, isn't it."

 The ruling of the Court was correct and indeed we do not see how, in the exercise of his discretion, he could have properly ruled otherwise. State v. Hamilton, 149 Me. 218, 234, 100 A.2d 234; State v. Warner, Me., 237 A.2d 150, 164.

### Evidence of Ballistics Experts

The rifle which was introduced in evidence as the death weapon was "test fired" by a ballistics expert to determine, in his words, "whether or not or at what distance the gun would register powder residue." The expert had examined exhibits for powder residue found on the body of the victim. The testimony of the ballistics expert, over the objection of defense counsel, reads:

"Q Did you make an examination of State's Exhibits 15 and 16, the sweater and blouse, for powder residue?

"A Yes, sir, I did.

"Q What did you find?

"MR. CARLTON: I object.

"THE COURT: On what grounds?

"MR. CARLTON: On the grounds that it is immaterial at this point. There has been no suggestion that the same comparable variety of shell was used and so forth. I have no way of knowing whether they are the same or not.

"THE COURT: That goes to the weight of the testimony. You will have the opportunity of examination of this witness. I will overrule your objection. The witness may answer.

"MR. COHEN: What did you find as far as making powder residue examinations on the sweater and shirt.

"THE WITNESS: I found no evidence of powder residue on them."

Defense counsel later cross-examined the ballistics expert with respect to powder residue. The witness "couldn't be sure" that the test shells and the shell used in the killing were the same.

 The Court, in our view, correctly admitted the evidence pointing out that its weight was to be determined by the jury.

 The objection that the following question of the ballistics expert on redirect examination was objectionable on the ground that it was leading, is without merit. The redirect testimony reads as follows, in part:

"Q I take it though by your testimony before that, in having the bullet from the body, it is your opinion after doing your test firings that you related that that bullet was in fact fired from State's Exhibit No. 17. Is that correct?

"A That is right.

"Q Is there any question in your mind about that?

"MR. CARLTON: I object.

"MR. COHEN: Based upon your experience as a ballistics expert?

"THE COURT: I will permit the question. The objection is overruled.

"THE WITNESS: I have no doubt."

The question did no more than summarize the prior testimony of the witness to the effect that the bullet was fired from the rifle in question.

### Instruction

 The Court, over the objection of the defendant, declined to instruct the jury

on manslaughter as well as murder. The defendant states his position in his brief as follows: "Inasmuch as the corpus delicti was not established by independent evidence to a probability the jury should have been allowed to speculate as to manslaughter, as well as murder, in the event they were going to be allowed to decide anything." The argument adds nothing to the position of the defendant. The body of Jane Lund, who had been shot to death, found in a shallow and unmarked grave, was sufficient to establish the corpus delicti of an unlawful homicide, whether manslaughter or murder.

 In our opinion the complete record establishes plainly that the defendant was entitled only to have the jury find him guilty or not guilty of murder. The principles are stated in State v. Park, 159 Me. 328, 333, 193 A.2d 1. See also 40 Am.Jur.2d Homicide § 526.

(4) *Newly discovered evidence*

 There was no error in denying defendant's motion for new trial based on newly discovered evidence. Some months after the trial the defendant lead officers and his attorney to a point several miles from the scene of the homicide. Here there were found two sheets. The defendant in substance testified that in disposal of waste from his camp after the death of his wife, he threw away two sheets in which there were small bullet holes. He contends that he did not know until after the trial that the sheets might have evidential value to meet the contention of the State that lack of powder residue on the sweater and blouse negatived the possibility of suicide. There is much evidence to indicate that the sheets had little value as evidence to establish the desired point. Beyond this, however, the defendant is not entitled under recognized principles to a decision granting a new trial for newly discovered evidence. The evidence was not in the legal sense newly discovered. The evidence was known to the defendant. He says that he

removed the sheets from the cabin and threw them away with the waste. That he did not appreciate the possible significance of the sheets as evidence in the case is not material.

In State v. Casale, 150 Me. 310, 110 A.2d 588, we set forth the tests to be applied to such a motion. See also State v. Papalos, 150 Me. 370, 113 A.2d 624; State v. Irons, 137 Me. 294, 18 A.2d 798; LaVigne v. Commonwealth (Ky.) 353 S.W.2d 376, 92 A.L.R.2d 988, with annot. 993, 995, 999; Brine v. State, Me., 264 A.2d 530 at 536.

 The defendant objected to the refusal of the Court to permit his counsel to make a statement "for the limited purpose of filling the gap as to the identity of the spot where the sheets were found."

Counsel sought to show by his own statement that the spot pointed out by the trial counsel for the defendant was the same spot as was shown by counsel to an investigator a few hours later.

If the matter had been of importance, which it is not, the testimony could have been taken. There is no suggestion of any controversy on the point.

The defendant sought to enter the evidence of Sheriff DeWinter of Kennebec County to corroborate the conferences held by the defendant with trial counsel at the Kennebec County Jail. The defendant offered a letter as proof in order to eliminate oral testimony.

The ruling, excluding the testimony was correct; the proposed evidence had no bearing on the issues relating to newly discovered evidence.

We find no error in the conduct of the trial, including the disposition of the several motions.

The entry will be

Appeal denied. Appeal from denial of motion for new trial on ground of newly discovered evidence denied.