STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES
HAROLD, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1981—Decided March 26, 1982.

Before Judges MICHELS, McELROY and J. H. COLEMAN.

*John M. Apicella*, Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness*, Public Defender of New Jersey, attorney).

*Mary Jane Cooper*, Deputy Attorney General, argued the cause for respondent (*James R. Zazzali*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

McELROY, J. A. D.

In a trial by jury defendant was convicted of (1) rape, contrary to *N.J.S.A.* 2A:138–1; (2) assault with intent to rape, in violation of *N.J.S.A.* 2A:90–2, and (3) breaking and entering with intent to rape, a violation of *N.J.S.A.* 2A:94–1. Defendant's motion for a new trial was denied. The trial judge sentenced him to 20 to 25 years on the rape conviction, merged count two with the rape count and imposed a concurrent sentence of three to five years on the conviction under the third count. Defendant appeals contending:

POINT I—THE TRIAL COURT COMMITTED ERROR OF CONSTITUTIONAL DIMENSION WHEN IT RULED THAT EVAN GREEN WOULD NOT BE PERMITTED TO TESTIFY AS A DEFENSE WITNESS THAT HER PREVIOUS TESTIMONY WAS UNTRUTHFUL.

POINT II—THE COMPLAINING WITNESS WAS INCOMPETENT TO TESTIFY PURSUANT TO *EVIDENCE RULE* 17 (Partially raised below).

POINT III—THE COURT ERRED IN DENYING DEFENDANT A HEARING PURSUANT TO *N.J.S.A.* 2A:84A–32.1.

POINT IV—THE COURT BELOW SHOULD HAVE EXCLUDED DEFENDANT'S PRIOR CRIMINAL RECORD SO AS TO PERMIT HIM TO TESTIFY IN HIS OWN DEFENSE.

POINT V—THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL BY RESTRICTING HIS SCOPE OF CROSS EXAMINATION.

POINT VI—THE COURT ERRED IN PERMITTING "FRESH COMPLAINT" TESTIMONY.

POINT VII—DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND CONSTITUTES AN ABUSE OF DISCRETION.

We have examined the record, considered defendant's contentions and with the exception of the issue raised in defendant's first point, hold the issues raised are clearly without merit. *R.* 2:11–3(e)(2).

The first point raises as error the trial judge's refusal to permit defendant to call as a defense witness Evan Green who, after testifying for the State, recanted her important testimony. The essential facts follow.

The victim in this matter was an 18-year-old retarded girl. The trial judge found her qualified to testify and she identified defendant as the person who entered her bedroom window and sexually attacked her. The quality of the testimony of this witness, although of sufficient probative value to carry the case to the jury, was greatly bolstered by that of the nine-year-old witness, Evan Green. This child, defendant's niece, stated that she saw defendant enter the victim's window and remain in the apartment for a length of time. She also testified that her friend, the retarded victim, approached her shortly after the rape and, in "fresh complaint" circumstances, described the crime to her and identified defendant as her assailant. The considerable value of this witness' testimony to the State's case is obvious.

Evan Green completed direct and cross-examination at trial on January 16, 1980. On the morning of January 17, 1980 defense counsel and the prosecutor apparently met with the trial judge in chambers where some discussion was had indicating that the child wished to change her prior testimony. Thereafter, in open court and upon the record, defense counsel indicated that after court adjourned for the day on the afternoon of January 16 she was approached by Daisy Green, Evan's mother, who advised counsel that Evan had lied about having seen the defendant enter the victim's apartment through the bedroom window. Mrs. Green indicated Evan had lied because the victim had asked her to do so and had promised her a dollar if she would so testify. Defense counsel advised the judge that she had interviewed Evan on the morning of January 17 and the child had indicated that she had lied and had been promised a dollar by the victim to do so.

Defense counsel advised the judge that she intended to call Evan Green as a defense witness to so testify. When asked by

the judge whether the State had any objection, the prosecutor stated that she had and requested the judge to "evaluate" the child before permitting the witness to be called by the defense. The prosecutor advised the judge that at the lunch recess, and after Evan had testified, she observed Evan's female relatives were hostile toward Evan and that she and a state investigator were concerned later that day as to "what treatment" the child might receive at the hands of her family. She also stated that she had spoken to Evan on the morning of January 17 and found "her attitude had turned around 180 degrees from what it was yesterday; completely hostile; she didn't want her uncle to go to jail." The judge had Evan Green brought into the courtroom and, in the absence of the jury, she was questioned by the judge.

The interrogation developed that Evan was now ready to testify that all of her previous testimony consisted of lies. Evan stated, "I lied for [the victim]. My uncle didn't rape [her]." She told conflicting versions as to when the victim promised her a dollar, but emphatically stated she had not seen her uncle climb over a gate and enter the victim's window. The following then occurred:

Q. And you got punished last night didn't you?
A. Yes, and I got off it last night, too.
Q. Why?
A. Cause I told my mom the truth.
Q. But you were being punished, you said you told a lie and once you said it was a lie then you weren't punished anymore right?
A. Yes.

. . . . . . . .

Q. What did they do?
A. Nothing, just send me in the bedroom.

. . . . . . . .

Q. Did they make you stay there?
A. U -hum.
Q. Until she came home [*sic*], wouldn't let you come out until you said it was a lie?
A. Uh-hum.

The witness, in what appears to be a conflicting version, then said she had admitted her "lie" to her mother and aunt (or some

other relatives, it is not clear) while walking home with them from the courthouse.

The trial judge then sent the witness out of the courtroom. The judge next spoke to a Diane Fuschiello, not otherwise identified on the record, who advised that she had spoken to Evan that morning; that Evan told her that "she didn't want to get her uncle in jail" and also said, "she wasn't going to get any of her people in any trouble." Defense counsel then indicated she had talked to Evan outside the presence of her female relatives "for about two minutes" that morning and told Evan, "I want the truth, now that's what we are looking for and I don't want you to be afraid." Counsel advised that despite this approach "[Evan] stuck to her story." Ms. Fuschiello then stated that Evan was "very confused as to when [the victim] was supposed to give her this dollar. It went from [the victim] giving her a dollar yesterday at 4:30 and then give her a dollar today and then giving her the dollar when the incident occurred back in August . . . ." Ms. Fuchiello also stated Evan had indicated that the victim was not raped by defendant but had "gave it up" and that Evan said she knew this because her aunt had told her so.

We have recited this material, some of which is unsworn hearsay, in order to properly reflect the proceedings had below on the issue of defendant's right to call Evan Green as his witness and the judge's conscientious but, in our view, mistaken approach to resolution of that issue. It is apparent that the judge viewed defendant's right to call this witness on defendant's case as giving rise to a preliminary duty on the part of the court to first pass upon the credibility of her recantation. The court ruled:

> I want the names and addresses of each of those women that have been sitting in the courtroom. I would indicate that from my questioning of Yvonne [*sic*] this morning, her attitude, her facial expressions when talking to me, the basic story that she has given us this morning is the most classic example of an attempt to influence a child's testimony that I have ever come across.
>
> It's quite obvious that we can well imagine what happened to the child that night and the manner and methods that were used to have her change her testimony.

I have never seen anything that appears so apparent on the face that a child's testimony has been changed by pressure, punishment and we can only imagine what else.

I would indicate that her testimony as given on direct and cross will stand for her own benefit, for her own welfare, I would deny the request of the defense to call her as a witness.

It's apparent that any denial of her testimony at this time was influenced by, I assume, the individuals that were here in court. That's why I want their names and addresses. I'm going to reserve the right to direct the prosecutor, possibly, in the future to bring charges against them.

Later that same day the judge, exhibiting understandable outrage based upon his conclusion that Evan Green's female relatives had unduly influenced her recantation, spoke directly to those relatives:

THE COURT: I would like to indicate to you that Yvonne [*sic*] was brought into Court this morning and took the stand again and she told us from the stand that what she testified to yesterday was a lie and that she never saw Mr. Harold go into the window of Colleen's apartment and she only said that she told that story yesterday or she didn't know why she told the story yesterday, but except that Colleen had asked her to say it and that Colleen had said she was going to pay her a dollar if she testified that way.

She came in this morning and said that that was not true; it was a lie and that she did not see Mr. Harold come in the window.

After she told us that from the stand and I was talking to her, when she was sitting here; I made up my mind that I would not let her tell the jury that it was a lie because I don't believe it was a lie.

And I'm telling all of you right now, that if I hear of any type of punishment given to Yvonne [*sic*] for what she testified to yesterday, I'll have each and every one of you in here on charges.

Obviously, something happened last night, some type of punishment was given Yvonne [*sic*] to make her change her story and I'm leaving it to the prosecutor to decide whether to bring charges against each one of you regarding interfering with justice.

She said she was punished that night obviously, she was, but the punishment, she said did not make her change her mind. She just said to all that she lied. I don't believe that. I believe you forced her to change her story and if I again, if I hear one single bit of punishment given to that child as a result of her testimony in this case, you will all be in here on charges.

Subsequent to his conviction the defendant brought a motion for new trial. Among other grounds, defendant's supporting memorandum urged that the jury should have been permitted to hear the recanting testimony of Evan Green. The argument was, inexplicably, not founded upon due process grounds; rather, counsel urged that *State v. Carter*, 69 *N.J.* 420, 427 (1976),

"and citations therein," required the court to make a finding that the recantation testimony was unbelievable and the court had failed to do so. The issue was not argued orally by defense counsel because she chose to rely on her memorandum as to this point. The trial judge reserved decision of all the grounds raised on the motion for a new trial. In a thoughtful and well considered written opinion, erroneous only as to the recantation issue, the judge properly disposed of all issues raised by that motion. To the extent those issues are here raised, and except for the disposition of the recantation issue, we affirm substantially for the reasons given by the court in that written opinion.

We begin our discussion of the recantation issue with the preliminary observation that when this testimony was proffered at trial defense counsel made no legal argument in support of defendant's right to call Evan Green as a defense witness and, as observed above, later argument focused upon the point as though the controlling principles were those of *State v. Carter, supra*. The argument defendant now raises abandons that view of the matter and focuses upon defendant's due process right to defend himself. We also regard the issue as founded upon such fundamental right and deem it to be of sufficient proportion to require our review. *R*.2:10–2.

The trial judge in his written opinion treated the issue in fashion similar to defendant's approach in his memorandum filed with his motion for a new trial and relied on *Carter, State v. Puchalski*, 45 *N.J.* 97 (1965) and *State v. Baldwin*, 47 *N.J.* 379 (1966), *cert.* den. 385 *U.S.* 980, 87 *S.Ct.* 527, 17 *L.Ed.*2d 442 (1966), *cert.* den. 52 *N.J.* 502 (1968). The judge in his written opinion observed, "the court can see no meaningful distinction between those cases and the case at hand."

We observe that *Carter, Baldwin* and *Puchalski* dealt with motions for a new trial where a witness, after trial, recanted his trial testimony. The trial judge here correctly observed that those cases regard recantation testimony as suspect and untrustworthy and for such reason, on a motion for new trial, hold the "burden of proof rests on those presenting such testimony to

establish that it is probably true and the trial testimony probably false. *Carter, supra* at 427." It is because, in those cases, the recantation testimony is urged as a basis for new trial, as a matter of judicial discretion, *State v. Smith*, 29 *N.J.* 561, 573 (1959), and there is then no jury present to weigh the evidence, that the obligation is upon the trial court to weigh the believability of the recantation recital against the testimony previously given by the same witness. A trial judge in such circumstances is, as was observed by Justice Cardozo in his concurring opinion in *People v. Shilitano*, 218 *N.Y.* 161, 112 *N.E.* 733, 739 (Ct.App. 1916), "not at liberty to shift upon the shoulders of another jury his own responsibility ... He [is] charged with a responsibility to seek the truth himself."

The principles of the cases relied upon by the court below clearly have no application to recantation during trial where the primary function to weigh credibility lies with the jury and not the court. This thought is implicit in the observation made by former Chief Justice Weintraub in *State v. Baldwin, supra,* when he observed:

> Recantations by fellow prisoners are not uncommon. It would be unwise to vest in a State's witness the effective power thereby to grant a new trial. Recantations are inherently suspect. And the issue for the trial court upon the application for a new trial is not whether the new story, had it been available at trial, would have impugned the credibility of the witness, for obviously a different story under oath must have that effect, but rather the question is whether the testimony given at the trial was probably false and that on that account there is substantial possibility of miscarriage of justice. Thus the trial judge must himself consider where the truth probably lies, and if the trial court is satisfied the present testimony of the recanting witness is unbelievable, the application must be denied. [*Id.* at 400]

There is, indeed, a meaningful distinction between the procedures necessary to treat recantation when urged as a ground for new trial and when urged as a matter of defendant's right to present it through a witness at trial. The stringent burden of proof imposed by *Carter, Puchalski* and *Baldwin, supra,* was, for that reason, not imposed in *State v. Wolf,* 44 *N.J.* 176 (1965), where recantation testimony was proffered after the jury had retired to deliberate and the Supreme Court was required to view the trial judge's refusal to reopen the case at that juncture.

Recantation subsequent to a conviction is ordinarily offered as newly discovered evidence. In *State v. Puchalski, supra,* the court observed:

> The guidelines for the consideration of such an application are stated in *State v. Artis,* 36 *N.J.* 538, at p. 541 (1962), as follows:
>
> "A motion for new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion. *State v. Smith,* 29 *N.J.* 561, 573 (1959). To entitle a party to a new trial on the ground of newly discovered evidence, the new evidence must be (1) material to the issue *and not merely cumulative or impeaching or contradictory*; (2) discovered since the original trial and not discoverable by reasonable diligence prior thereto; and (3) of the sort which would probably change the jury's verdict if a new trial was granted. *State v. Johnson,* 34 *N.J.* 212, 222 (1961); *State v. Bunk,* 4 *N.J.* 482, 486 (1950). *To sustain a motion for a new trial the proffered evidence must meet all three aspects of the test. State v. Johnson, supra,* 34 *N.J.,* at p. 223." [45 *N.J.* at 107 emphasis supplied]

The right of a defendant to present relevant evidence at trial is of constitutional dimension and involves his fundamental privilege to call a witness in his own behalf and present his defense. It implicates due process considerations. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi,* 410 *U.S.* 284, 302, 93 *S.Ct.* 1038, 1049, 35 *L.Ed.2d* 297 (1973). We hold, therefore, that the trial judge, in these circumstances, misconstrued his role and thereby usurped the jury's role to weigh the credibility of the recantation testimony offered by defendant.

The State urges that what the trial judge did here was, in effect, to make an *Evid.R.* 4 discretionary determination. We reject that argument as not applying to the circumstances here presented. Clearly the judge made no such ruling. His refusal to permit defendant to call Evan Green as a witness was solely the result of a weighing of the credibility factors of her recantation in light of the "punishment" inflicted upon her by her female relatives and a judicial conclusion that the "child's testimony was changed by pressure, punishment and we can only imagine what else." It is manifest that if the judge could reach such conclusion the jury might equally do so. Like the judge,

the jury could reasonably conclude that Evan changed her testimony as a result of familial pressure. They should not have been denied that opportunity nor defendant denied the right to have the witness' entire testimonial credibility weighed by the jury since there is no evidence that defendant was the author of any attempt to influence the witness.

One final observation is necessary. There is no doubt that the trial judge's approach, which we here find erroneous, was based upon a commendable desire to thwart what he deemed to be a conspiracy to subvert the truth, to suborn the witness to perjure herself and to assault the integrity of the judicial process. If such conduct occurred, the test of its existence and the imposition of guilt for such conduct lay in indictment of the conspirators and a trial on the issue.

For the reasons heretofore expressed the judgment of conviction entered below is reversed, the sentence imposed is vacated and the matter is remanded for a new trial.